[No. 19031. In Bank.—March 3, 1894.]

H. C. GORDON, RESPONDENT, *v.* CITY OF SAN DIEGO, APPELLANT.

DEEDS—RECITALS—ESTOPPEL.—Particular recitals in a deed are binding upon parties and privies, and this doctrine applies to the authorized acts of a corporation; but it is essential to an estoppel by deed that the deed itself should be a valid instrument, and if void, though under seal, it does not work an estoppel at law or in equity.

ID.—RECITALS OF AUTHORITY—CONVEYANCE OF PUEBLO LANDS.—Where a conveyance of the pueblo lands of the city of San Diego recited that the qualified electors of the city, held and elected for that purpose, directed, authorized, and empowered the trustees to sell the land in question, and that the board of trustees duly assembled, and acting as such, by resolution, prescribed the terms and conditions upon which sales would be made, the recitals of authority, when coupled with the law, are sufficient

evidence to bind the parties, and to show that title passed by the deed, provided it was properly executed.

ID.—EXECUTION OF DEED BY CITY TRUSTEES—ABSENCE OF CORPORATE SEAL —CURATIVE ACT.—A deed of pueblo lands, executed by the trustees of the city of San Diego, in 1869, who purported to act for and in the name of the city, except that they signed their names as trustees, and affixed their private seals opposite their names, without any corporate seal, was validated by the act of February 7, 1874, validating conveyances from the city of San Diego which had no corporate seal.

ID.—CONSTITUTIONAL LAW—VALIDITY OF CURATIVE ACT.—The curative act of February 7, 1874, validating conveyances from the city of San Diego which had no corporate seal, and giving them the same effect and validity as if a corporate seal of the city had been regularly provided and properly affixed, is constitutional, and operative in all cases where no vested rights in third parties accrued between the execution of the instrument and the passage of the curative act.

ID.—TENANCY IN COMMON—TITLE OF CITY.—Where a city conveys an undivided one-half of a pueblo lot, and on the next day conveys the entire west one-half of the same lot to another grantee, such latter conveyance does not affect the title of the city as a tenant in common to an undivided one-half of the east half of the lot.

ID.—PARTITION OF LAND—RATIFICATION—SALE OF SPECIFIC TRACT.—A sale by a tenant in common by specific bounds of a portion of the land held in common does not of itself effect a partition of the land, and is not binding upon a cotenant unless ratified by him.

ID.—ESTOPPEL.—Estoppels must be mutual; and where it does not appear that the first grantee of the city, or his successors to an undivided half of the pueblo lot, do not still hold an undivided interest in the west half of the lot, the city cannot be estopped from claiming its original undivided interest in the east half thereof by reason of the conveyance of the west half of the lot as a specific tract to a subsequent grantee.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*William H. Fuller*, for Appellant.

*Cassius Carter*, for Respondent.

The COURT.—In this case Department One rendered the following opinion, which was prepared by Mr. Commissioner Searls. We still adhere to the views therein expressed:

" This is an action to quiet title to the east half of pueblo lot 1215, containing about forty-five acres of land,

situated in the city of San Diego. The appeal is taken by defendant from a judgment in favor of plaintiff adjudging him to be entitled to said east half of pueblo lot 1215, according to the Poole map of the pueblo lands of the city of San Diego, made in 1856, and adjudging that defendant has no title thereto, etc.; also from an order denying a motion for a new trial. The city of San Diego was a municipal corporation, organized under two acts of the legislature, approved January 30, 1852, and April 28, 1852, respectively. The title of respondent is derived from the appellant, the city of San Diego, through a conveyance executed by the trustees of said city on the twenty-seventh day of February, 1869, to one Thomas Whaley, and which conveys the undivided half of lot twelve hundred and fifteen (1215), according to the official map of said city made by Charles F. Poole, A. D. 1856, and on file, etc. The deed is executed by the president and trustees of the city, who attach their private seals, it being recited that no corporation seal had been 'as yet provided.' Among the recitals of the deed are the following: ' Whereas, the president and trustees aforesaid, by the vote of the duly qualified electors of the said city of San Diego, at an election for the special purpose, held in said city on the twenty-fifth day of May, A. D. 1868, in pursuance of an act of the legislature of the state of California entitled, "An act to repeal the charter of the city of San Diego, and to create a board of trustees," approved January 30, 1852, were directed, authorized, and empowered to sell pueblo or city lands, the property of said city; and whereas, on the twenty-seventh day of February, A. D. 1869, the said president and trustees, in compliance with said vote and said act of the legislature, sold to said party of the second part the land and premises, hereinafter described, for the sum of twenty dollars in gold coin of the United States of America, being at the price of twenty-five cents per acre, upon the conditions provided for and prescribed in a certain resolution or order of said board of trustees, made and entered on the eighth day of June, A. D. 1868,

and said party of the second part has made and completed all the improvements upon said lands by said resolutions or order required to be made, and has fully paid said sum of twenty dollars into the treasury of said city.' The conveyance was duly acknowledged, and was recorded in the office of the county recorder of the county of San Diego, August 21, 1869. On the twenty-eighth day of February, 1869, the same trustees, by a like deed containing like recitals, conveyed the west half of the same lot (No. 1215) to one J. C. Babcock, which deed was acknowledged and duly recorded March 1, 1869, viz., prior to the acknowledgment and recordation of Whaley's deed. At a special meeting of the board of trustees held June 8, 1868, it was resolved 'that the only way pueblo lands will be granted is as follows': Then follow the conditions, which are, in substance, that one-half of the purchase price is to be paid on securing certificates; the land to be occupied and improved within six months after certificate is taken, and it must be taken out within one month after approval of the petition; two hundred and fifty dollars' worth of improvements to be placed upon tracts of forty acres or less, and four hundred dollars upon tracts of eighty acres, within one year, and if not made, previous payment to be forfeited, and land to revert to the city. When the improvements were made the petitioner became entitled, upon payment of the residue of the purchase price, to a deed, surveys to be made at expense of purchaser.

"It was conceded at the trial that title to the pueblo lands, of which lot 1215 was a part, was at the date of the execution of the Whaley deed in the city of San Diego, and that whatever title passed by that conveyance was vested in H. C. Gordon, the respondent. Appellant objected at the trial to the introduction of the Whaley deed upon several grounds, the most important of which was that said deed was not executed on the part of the city as required by law. The specification of the reasons why not executed as required by law shows that there was no showing that the city ever

passed a resolution authorizing the sale or transfer of the property described in the deed; that the property was not sold or conveyed in accordance with the charter of the city of San Diego. The Whaley deed recites the particular facts upon which the authority of the city trustees to convey is supposed to be founded.

"That particular recitals in a deed are binding upon parties and privies, and that this doctrine applies to the authorized acts of a corporation, does not seem to be disputed by appellant. It is essential to an estoppel by deed that the deed itself should be a valid instrument; and, if void, though under seal, it does not work an estoppel at law or in equity. (*Caffrey* v. *Dudgeon,* 38 Ind. 512; 10 Am. Rep. 126; *Merriam* v. *Railroad Co.,* 117 Mass. 241.) The contention of counsel for appellant is that the deed to Whaley not being executed under the corporate seal of the city of San Diego before it was admissible in evidence, respondent should have been required to show that the corporate authorities possessed the power to sell the property, that it was sold under such power, and that the board of trustees, when assembled and acting as such, sold the property, and directed the execution of the deed to Whaley. The city of San Diego, as it existed at the date of the execution of the Whaley deed, as before stated, was organized under an act of the legislature of the state of California, approved January 30, 1852, and by an act approved April 28, 1852. The first-named act provided for the election of three trustees, one of whom should be president, etc. The seventh section of the act authorized the board of trustees to sell as much of the property of the city as was necessary to pay its debts, 'giving at least ten days' notice of any property to be sold, and to continue the sale from time to time until said debt is paid.' Section 11 of the act provides that 'when the debts of said city are paid no more of the city property shall be sold except by a vote of the inhabitants of said city they shall be authorized to do so,' etc. It appears from the act that there had been a previous corporation of the same

city, the charter of which was repealed by the act first above cited, and the provisions of section 7 were intended to apply to the payment of the debts thereof. The language of section 11, that after the debts were paid 'no more of the city property shall be sold, except by a vote of the inhabitants of said city they shall be authorized to do so,' must be construed to empower the trustees to sell upon a vote in favor thereof. When the debts were paid the power of the trustees under section 7 ceased, and thereafter their power of alienation came, if at all, from section 11 and the vote of the inhabitants. According to the recitals of the Whaley deed, the qualified electors, at an election for that purpose held, directed, authorized, and empowered the trustees to sell the land in question, and the board of trustees duly assembled, and acting as such by resolution, prescribed the terms and conditions upon which sales would be made. The recitals in the deed, coupled with the law, are sufficient evidence to bind the parties and show that title passed by the deed, provided it was properly executed. We have seen before that it was executed by the trustees, who purported to act for and in the name of the city, except that they signed their names as trustees, and affixed their private seals, etc. On the seventh day of February, 1874, an act of the legislature was approved in the following language: ' SECTION 1. No deed, conveyance, or grant of land in fee, made prior to the twenty-fourth day of November, A. D. 1871, for and on behalf of the city of San Diego and the inhabitants thereof, for a valuable consideration, by the corporate authorities of said city, shall be invalid by reason of the want of a corporate seal, but all of said deeds, conveyances, and grants shall have the same force, effect, and validity as if a corporate seal of said city had been regularly provided and properly affixed thereto by the proper corporate authorities of said city.

" It is not deemed necessary to go to any great length in discussing the question of the power of the legislature to enact valid curative laws. The field is a broad

one, often involving questions of constitutional law,
vested rights, retroactive laws, etc., and giving rise to
distinctions sometimes too subtle to be readily grasped
by the ordinary mind.   Judge Cooley in his work on
Constitutional Limitations, at page 457, states concisely
the rule on this subject, thus: 'If the thing wanted or
failed to be done, and which constitutes the defect in
the proceedings, is something the necessity for which
the legislature might have dispensed with by prior stat-
ute, then it is not beyond the power of the legislature
to dispense with it by subsequent statute; and if the
irregularity consists in doing some act, or in the man-
ner or mode of doing some act, and which the legisla-
ture might have made immaterial by prior law, it is
equally competent to make the same immaterial by a
subsequent law.'   Tested by this rule, all doubt must
vanish as to the power of the legislature to enact the
curative law above quoted.   No question has ever been
suggested, so far as known, of the power of the legisla-
tive branch of government to abolish the distinction
between sealed and unsealed instruments, as was done
by section 1223 of the Civil Code.   That a like provision
might be enacted in reference to corporate and official
documents can scarcely admit of doubt.   It is therefore
held that the deed of conveyance to Whaley is to be
taken, received, and interpreted between the parties to
this action precisely as though sealed with a corporate
seal of the city of San Diego at the date of its execution.
Had vested rights in third parties accrued between the
execution of the instrument and the passage of the
curative act a different question would have been pre-
sented.   That question need not concern us in the
present case.   Treating the deed as duly executed in
point of form, under a statute conferring power upon
the officers to sell and convey the lands of the city upon
a majority vote of the inhabitants, the recitals in the
deed that an election had been held pursuant to the
provisions of the statute, at which the trustees 'were
directed, authorized, and empowered to sell pueblo or

city lands, the property of said city,' etc., is *prima facie* evidence that an election had been held. It is not here a question of power, but of proof. Many of the authorities go much further in holding to the binding force of recitals in deeds executed by municipal corporations than is necessary to uphold the conveyance in this case. (*Jamison* v. *Fopiana*, 43 Mo. 565; 97 Am. Dec. 414; Devlin on Deeds, sec. 348, and cases cited.) I am certain the court did not err in the admission of the Whaley deed. Like considerations apply to the admission of the conveyance from the city to Babcock, provided always, that it was material testimony in the case, relevant to the issues joined therein, all of which may properly be considered in connection with the findings.

"The point is made that the judgment is contrary to the findings, and not warranted by the facts as found in the case. The facts as found by the court may be epitomized as follows: 1. The city of San Diego, being the owner of pueblo lot 1215, on the seventh day of February, 1869, conveyed in due form and by valid deed an undivided one-half thereof to one Thomas Whaley; that the plaintiff herein, H. C. Gordon, is the successor in interest, by proper mesne conveyance of the land and interest conveyed to Whaley. 2. That on the twenty-eighth day of February, 1869, one day after the conveyance to Whaley, the city of San Diego executed to one J. C. Babcock a proper deed of conveyance of the entire west half of the same lot, viz., lot 1215. 3. The deed to Babcock was first acknowledged and recorded. Upon this state of facts the court entered judgment quieting and confirming plaintiff's title to the entire east half of lot 1215, and perpetually restraining defendant, the city of San Diego, from asserting title thereto, and that it be declared to have no title thereto. The position of respondent is: 1 That by the conveyance to Whaley of the undivided one-half of lot 1215 he became tenant in common with the city therein. 2. That when, on the next day, the city conveyed the entire west half of the same lot to Babcock it had con-

veyed the whole thereof, and, as a consequence, ceased to have any interest in any part of the lot. This second position is not readily apparent. No doubt two halves of a thing are equal to the whole of it; but the undivided one-half and the whole of one-half of a thing are not equal to the whole of it. When Whaley received a deed of an undivided one-half of lot 1215 he was a tenant in common with the city, and when on the next day the city sold the whole of the west half of the same lot it simply attempted to convey the whole of a parcel of the lot in which it owned an undivided half. If a grantor conveys lot A, which he does not own, I am at a loss to see how, in the absence of mistake or fraud, he can be deemed to have conveyed lot B, which he does own. If the title of Whaley failed to the west half of the lot it was by a failure to have his deed acknowledged and recorded prior to the recordation of the Babcock conveyance.

" There is, however, another and distinct theory upon which respondent contends the judgment of the court below can be upheld. Section 764 of the Code of Civil Procedure, so far as material, is as follows: 'Whenever it shall appear, in an action for partition of lands, that one or more of the tenants in common, being an owner of an undivided interest in the tract of land sought to be partitioned, has sold to another person a specific tract by metes and bounds out of the common land, and executed to the purchaser a deed of conveyance, purporting to convey the whole title to such specific tract to the purchaser in fee and in severalty, the land described in such deed shall be allotted and set apart in partition to such purchaser, his heirs, or assigns, or in such other manner as shall make such deed effectual as a conveyance of the whole title to such segregated parcel, if such tract or tracts of land can be allotted or set apart without material injury to the rights and interests to the other cotenants who may not have joined in such conveyance.' Under this section, or rather by analogy to it, respondent claims that where there are two ten-

ants in common, each owning an undivided half of land, while neither can make a partition binding upon the other by assuming to convey either half specifically, yet if one does so convey, the other would be at liberty to acquiesce, and to accept the remaining half; and that where he has, as in the present case, done so by convey-ing such remaining half specifically, the two convey-ances operate as a complete and binding partition.   In support of this proposition we are referred to Freeman on Cotenancy, sections 188, 535, and to the cases of *Dall* v. *Brown*, 5 Cush. 289, and *Eaton* v. *Talmadge*, 24 Wis. 223.   At section 188 of Freeman on Cotenancy it is said: 'A deed of a specific parcel of land made by one cotenant is not binding on the others, nor can their rights be, to any extent, prejudiced by it.   Such a con-veyance is not void, but only voidable.   It may, there-fore, be approved and ratified by the cotenants, and thereby be made to operate as a conveyance in severalty.' *Eaton* v. *Talmadge*, 24 Wis. 223, is substantially to the same effect as the above quotation.   The same may be said of many decisions upon the same question.   A par-tial agreement for the partition of land is void under the statute of frauds, and cannot be enforced; but where consummated and ratified by the parties it will be upheld. In *Borel* v. *Rollins*, 30 Cal. 409, it was held that, where an attorney in fact exceeded his authority in executing a deed of partition, his principal, who had ratified the act of partition by his own acts and conduct of solemn sig-nificance, such as the execution of deeds of conveyance, which necessarily recognized the partition as of legal validity was estopped from saying there had been no partition.   If the city of San Diego is bound by its acts in the premises it must be upon the ground of estoppel. But estoppels must be mutual.   All the authorities are to the effect that a sale by a tenant in common by spe-cific bounds of a portion of the land in common is not binding upon his cotenant unless ratified by him.   I fail to find in the record any evidence of ratification by Whaley, or those holding under him.   It is true it ap-

pears that the deed to Babcock was first acknowledged and first recorded; but Babcock, for all that appears, may have taken with actual notice of the prior deed of Whaley. Had Whaley conveyed the whole of the east half of lot 1215 an inference might be predicated, perhaps, on that act, as tending to show his acquiescence in a partition; but, so far as appears, he did not do so. It was stipulated at the trial 'that the plaintiff in this action succeeds by proper mesne conveyances to any title or interest in and to said pueblo lot No. 1215, which was conveyed to Thomas Whaley by the deed dated February 27, 1869.' The finding of the court is in harmony with the stipulation. I fail to find in these points any basis for an estoppel *in pais*. *Non constat* but that Whaley or his grantees may still hold an undivided interest in the west half of lot 1215."

It is ordered that the judgment and order be reversed, and the cause remanded for a new trial.