SCHODDE, EXECUTRIX OF SCHODDE, v. TWIN
FALLS LAND AND WATER. COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 2.    Argued March 7, 8, 1911.—Decided April 1, 1912.

Under the laws of Idaho relating to appropriation of water, the extent
of beneficial use is an inherent and necessary limitation upon the
right to appropriate; and one who appropriates does not have fur-
ther right to the current of the stream for the purpose of obtaining
power to distribute the water required for the beneficial use which is
the basis of his appropriation.

There is no rule of riparian rights in Idaho by which one whose land
borders on a stream can appropriate the whole current thereof for the
purpose of making fruitful the limited appropriation of water to which
he is entitled for beneficial use.

The Federal courts below rightly followed the decisions of the state
courts of Idaho, in holding that the common law doctrine of ripa-
rian rights had been abrogated to the extent that the provisions
of the constitution and statutes of Idaho in regard to the rights of
appropriators for beneficial use are in conflict therewith.

In this case held that one who had lawfully appropriated the amount
of water from a stream in Idaho to which he was lawfully entitled
for beneficial use could not restrain those below him from raising
the river so as to interfere with the power necessary to raise the
water appropriated by him to a height necessary for distribution
over his land; neither his appropriation nor his riparian rights gave
him any control over the current of the stream.

161 Fed. Rep. 43; 88 C. C. A. 207, affirmed.

THE facts, which involve the extent of the right to
appropriate water in Idaho, are stated in the opinion.

Mr. Joseph R. Webster, with whom Mr. Kirtland I.
Perky and Mr. John F. McLane were on the brief, for
plaintiff in error:

The decisions of both courts below ignore plaintiff's ri-
parian rights and his common law right to a continuance

of the flow of the current which are not abrogated by the doctrine of appropriation as applied in Idaho, but merely modified or supplemented as to the mode of acquisition and the conditions of enjoyment.

Plaintiff has complied with the requirements of the law of appropriation and has thus fixed his riparian right to the current, so as to vest the same in him as against subsequent appropriators.

No notice of intention to appropriate the current was necessary; the diversion of the current within the channel, by means of wing dams, to the plaintiff's wheels, was a sufficient diversion, if any is required, to satisfy the law of appropriation; and the maxim, "*Aqua currit et debet currere ut currere solebat*," applies. 3 Kent's Comm. 439–441, cited in *United States* v. *Rio Grande Dam and Irrigation Co.*, 174 U. S. 690, 702.

The right to the use of water flows from riparian ownership of land; it belongs to the land. The water must be permitted to run in its accustomed channel, without material alteration of the channel, or acceleration or diminution of the flow. The rights of the various riparian proprietors are equal regardless of any priority in such use; each must be careful not to injure any other. Each may make a reasonable use of the water as it passes, even though there is some slight decrease in quantity, or variation in weight and velocity, of the current.

The doctrine of appropriation is claimed to have overthrown the common law doctrine in many of the western States, Idaho among the number. It had its origin in the customs of the California miners, and its legal justification in necessity. For the history of its origin and development see *Irwin* v. *Phillips*, 5 California, 140; *Conger* v. *Weaver*, 6 California, 548; *Hill* v. *King*, 8 California, 336; *Bear River Co.* v. *New York Min. Co.*, 8 California, 327.

In these cases there is no denial of riparian rights if

any had accrued. In *Crandall* v. *Woods,* 8 California, 136, appropriation is established as a distinct doctrine, not based upon the common law, but derived from the customs of miners, and until the decision in *Lux* v. *Haggin* (1886), 69 California, 225, the California court is devoted to the development of the doctrine of appropriation.

While the doctrine of appropriation is thus established as independent of that of riparian rights, its principles come to be assimilated to the latter doctrine. *Phœnix Water Co.* v. *Fletcher,* 23 California, 481; *Hill* v. *Smith,* 27 California, 476.

For cases involving conflict between appropriation and riparian rights, see *Yunker* v. *Nichols,* 1 Colorado, 551; *Coffin* v. *Left Hand Ditch Co.,* 6 Colorado, 443; Long on Irrigation, § 6.

The question is one of the local law, and the rule laid down by the state courts having jurisdiction to declare the law in the particular case should be followed. *United States* v. *Rio Grande &c. Co.,* 174 U. S. 690; *Gutierrez* v. *Albuquerque Co.,* 188 U. S. 545; *Clark* v. *Nash,* 198 U. S. 361; *Kansas* v. *Colorado,* 206 U. S. 46.

As to riparian rights in Idaho, see act of February 10, 1881. See Laws, 267, and compare with California Civil Code, 1872, §§ 1410–1422. See also Rev. Stat., Idaho, 1887, §§ 3155–3167, and § 3299, Rev. Codes, 1909.

The state of the law when Idaho was admitted to the Union was an irrigation code taken from California, a statute conferring the right to the use of waters in riparian owners, and a single Supreme Court decision, adopting in effect the California doctrine of modified riparian rights as established in *Irwin* v. *Phillips* and *Lux* v. *Haggin.* By the constitution of 1889, while nothing is said about riparian rights, the use of water is declared a public use to be acquired by appropriation; it is no longer merely private riparian property where a question of priority of appropriation is involved. In other words, a purely ri-

parian right to the use of water may be defeated by a subsequent, as well as by a prior, appropriation, but it does not follow that the doctrine of riparian rights is "abolished *in toto.*"

For cases involving the doctrine of appropriation and of priority between appropriators, the public character of the use of waters, and the right of the State to regulate the matters involved in the application of the waters of the State to its development, during the first ten or twelve years of statehood, see *Wilterding* v. *Green,* 4 Idaho, 773; *Geertson* v. *Barrack,* 3 Idaho, 344; *Conant* v. *Jones,* 3 Idaho, 606; *Malad Valley Irrigating Co.* v. *Campbell,* 2 Idaho, 411; *Sandpoint Water & Light Co.* v. *Panhandle Development Co.,* 11 Idaho, 405; *Boise City Irrig. & Land Co.* v. *Stewart,* 10 Idaho, 38. *Powell* v. *Springston Lumber Co.,* 12 Idaho, 723, 1904, is the first case in Idaho which consciously recognized a riparian right as such. But it is soon followed by others. See *Johnson* v. *Johnson,* 14 Idaho, 561; *Shephard* v. *Cœur d'Alene Lumber Co.,* 101 Pac. Rep. 591.

A riparian owner in Idaho still retains such right to have the waters flow in the natural stream through or by his premises as he may protect in the courts as against persons interfering with the natural flow, or who attempt to divert or cut off the same wrongfully and arbitrarily, and without doing so under any right of location, appropriation, diversion or use, and who do not rest their right to do so upon any right of use or appropriation. *Hutchinson* v. *Watson Slough Co.,* 101 Pac. Rep. 1059.

A riparian owner may claim or "fix" his right in such a way as to prevent its subsequent appropriation. This is accomplished by "appropriating" that right in the manner prescribed by the statute.

The foregoing rules apply to this case. Up to the time that the defendant began the construction of its works the plaintiff had the rights of a riparian proprietor, good as against everybody but an appropriator.

The riparian right upon which the plaintiff insists is to the current flow of the stream. That is established. *Tyler* v. *Wilkinson,* 4 Mason, 397; *Weiss* v. *Iron Co.,* 11 Pac. Rep. (Ore.) 255; *Gould* v. *Boston Dock Co.,* 13 Gray, 442; *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 19; *Shamleffer* v. *Peerless Mill Co.,* 18 Kansas, 33; *Lux* v. *Haggin,* 69 California, 255; *McCalmont* v. *Whitaker,* 3 Rawle, 84; 23 Am. Dec. 102.

This riparian right to the flow is a valuable property right, of which the riparian owner cannot be deprived without his consent, or compensation being paid therefor, when it is desired to devote the right to a public use. *Yates* v. *Milwaukee,* 10 Wall. 497; *Pine* v. *York,* 103 Fed. Rep. 337; *Kaukauna Water Power Co.* v. *Green Bay Co.,* 142 U. S. 276; *Sturr* v. *Beck,* 133 U. S. 541.

Even assuming that defendant is an appropriator, the plaintiff must still prevail as a riparian owner. As a riparian owner, he had title to the current good as against all but an appropriator. He had the right to "fix" such right so as to prevent its subsequent appropriation, or its defeat by such an appropriation.

What was so clearly a riparian right at common law may be appropriated by a riparian proprietor under the Idaho law. The difference between the Idaho law and the common law of riparian rights rests principally in the mode of acquisition of those rights. Under the common law the right attaches to riparian proprietorship, and continues as incident thereto whether it is ever used or not. Under the Idaho law the right exists, but to be secure against the higher law of appropriation, it must be appropriated, that is, beneficially used; the riparian owner cannot sit back and retard the development of the country by claiming a dormant right. If he wants the right he must use it, and give notice to the world that he is using it, before some one else spends time and money in acquiring a similar right.

Plaintiff had a riparian owner's right to the current;

he could fix that right by an appropriation to a beneficial use so as to make it available as against a subsequent appropriator; he did fix the right by such an appropriation.

*Mr. Edward B. Critchlow*, with whom *Mr. William J. Barrette* was on the brief, for defendant in error:

Each State may determine for itself whether the common law rule in respect to riparian rights or the rule of appropriation shall be enforced as to waters within its boundaries. *Kansas* v. *Colorado*, 206 U. S. 46, 94.

Generally, the arid States and Territories, Idaho included, have adopted the rule that water may be appropriated for beneficial uses. Colorado—*Hammond* v. *Rose*, 7 Am. St. Rep. 258; Arizona—*Austin* v. *Chandler*, 42 Pac. Rep. 483; Idaho—*Drake* v. *Earhart*, 2 Idaho, 716; *Hutchinson* v. *Watson Slough Co.*, 101 Pac. Rep. 1059; New Mexico —*Trambley* v. *Luterman*, 27 Pac. Rep. 312; *Albuquerque &c. Co.* v. *Gutierrez*, 61 Pac. Rep. 357; Nevada—*Reno &c., Co.* v. *Stevenson*, 19 Am. St. Rep. 364; *Walsh* v. *Wallace*, 26 Nevada, 299; Utah—*Cole* v. *Richards Irrig. Co.*, 27 Utah, 205; 101 Am. St. Rep. 962; *Morris* v. *Bean*, 146 Fed. Rep. 431; Wyoming—*Willey* v. *Decker*, 100 Am. St. Rep. 939.

The common-law rights of riparian owners and the rights acquired under the doctrine of appropriation are distinct and antagonistic and cannot both be recognized or enforced. *Clark* v. *Nash*, 198 U. S. 361; *Boquillas Cattle Co.* v. *Curtis*, 213 U. S. 339; *United States* v. *Rio Grande Dam & Irrig. Co.*, 174 U. S. 690; *Hutchinson* v. *Watson Slough Co.* (Idaho), 101 Pac. Rep. 1059; *Stowell* v. *Johnson*, 7 Utah, 225.

Appropriation involves these several elements: An intent to apply to some beneficial use; an actual diversion such as gives physical control of the stream or such part as is appropriated; an application within a reasonable time to some useful industry. *Low* v. *Rizor*, 25 Oregon,

551; 37 Pac. Rep. 84; Black's Pomeroy's Water Rights, 48–51.

The manner of use so far as it affects the quantity of water sought to be appropriated must be reasonable and with due regard to the rights of others. An unreasonable claim of appropriation is a void claim. *Basy* v. *Gallagher*, 20 Wall. 670; *Atchison* v. *Peterson*, 20 Wall. 507; *Rio Grande West. Ry. Co.* v. *Telluride Co.*, 16 Utah, 137; *Roeder* v. *Stein*, 23 Nevada, 92; 42 Pac. Rep. 867; *Barnes* v. *Sabron*, 10 Nevada, 243; *Nevada Ditch Co.* v. *Bennett*, 30 Oregon, 59; *Van Camp* v. *Emery*, 13 Idaho, 202; *Hough* v. *Porter*, 51 Oregon, 318; *S. C.*, 98 Pac. Rep. 1083; *Farmers' Co-op. Ditch Co.* v. *Riverside Irrig. Dist.*, 16 Idaho, 525; *S. C.*, 102 Pac. Rep. 481; *Fitzpatrick* v. *Montgomery*, 20 Montana, 181, 187.

Plaintiff's claim is that the entire Snake River shall be allowed to flow as in a state of nature, with volume and current undiminished. This is tantamount to a claim either that the entire river has been appropriated by the plaintiff for the irrigation of about 420 acres of land, or that independently of any use or appropriation the right so to control the river vests through riparian ownership.

This claim which is the basis of plaintiff's asserted cause of action cannot be sustained.

Because the appropriation was for irrigation only and the limit of such appropriation was the amount necessary to irrigate about 430 acres; because the current or velocity, being a mere incident or function of the water, cannot be appropriated; because except as to the water actually placed upon the lands there was no such diversion as is necessary; because an appropriation of the entire stream, if plaintiff's use for the operation of water wheels was to be considered such, would be unreasonable and therefore void. In a legal sense it would not be beneficial; and because such an appropriation would be void for uncertainty.

MR. CHIEF JUSTICE WHITE delivered the opinion of
the court.

Since the writ of certiorari in this case was granted
the petitioner died, and his executrix was substituted.
The writ was allowed to enable us to review the action
of the court below in affirming a judgment of the Circuit
Court of the United States for the District of Idaho.
The judgment of the Circuit Court sustained a demurrer
to the complaint of the petitioner, who was plaintiff,
on the ground that it stated no cause of action. An ab-
solute judgment of dismissal was entered consequent
on the election by the plaintiff to stand on the complaint
as filed. The court below summarized the averments of
the three counts of the complaint, and as that summary
accurately and sufficiently states the case, we adopt and
reproduce it, as follows (161 Fed. Rep. 43):

"Plaintiff's complaint contains three counts. Briefly
stated, the cause of action as set out in the three counts
of the complaint is as follows: Plaintiff is the owner of
three tracts of land on the banks of Snake river, contain-
ing in the aggregate 429.96 acres. Two of these tracts,
containing 263.96 acres, are on the south bank, and one
tract of 160 acres is on the north bank. One of the tracts
on the south bank is agricultural land, and the other is
partly agricultural land and partly mining ground. The
tract of land on the north bank is agricultural. In the
year 1889 plaintiff's predecessors in interest, and in 1895
the plaintiff himself, appropriated certain quantities of
water of the flow of Snake river for use on said lands.
In the first count the quantity is stated in cubic feet per
second; in the second and third counts the quantities
are stated in miner's inches. The aggregate of water
appropriated as alleged in the three counts is referred
to in the briefs as 1,250 miner's inches. Soon after this
water was appropriated the parties in interest erected

water wheels in the river to lift the water to a sufficient height for distribution over the land. Nine of these wheels were erected opposite or near the tracts on the south side of the river, and two near the tract on the north side of the river. These wheels vary in height from 24 to 34 feet. The parties also constructed wing dams in the river adjoining or in front of the lands owned by them, for the purpose of confining the flow of the water of the river and raising it at such points above the natural flow of the river, so that the current would drive the water wheels and cause them to revolve and carry the water in buckets attached to the wheels to a height where it would be emptied into flumes and distributed over the lands by ditches and used thereon to irrigate and cultivate the agricultural land and work the mining ground. It is not alleged in the complaint, but it is assumed that the river at this point runs between high banks and that the water is lifted by the wheels at least 20 feet before it is emptied into the flumes for distribution over plaintiff's lands. In the year 1903, while plaintiff was using the appropriated water of the river upon the described premises, the defendant commenced the construction of a dam across Snake river at a point about nine miles westerly from and below the lands of the plaintiff. The work was prosecuted on said dam until its completion in March, 1905. This dam is so constructed as to impound all the water of Snake river flowing at said point, and to raise the water about forty feet in height. It is alleged that when defendant's dam was filled with water the water was turned into a canal known as the Twin Falls canal, owned by the defendant, and located on the north side of the river; that this canal was constructed at a cost, as plaintiff is informed and believes, of $1,500,000, for the purpose of supplying water for irrigation and domestic purposes to the settlers on about 300,000 acres of arable and arid lands situated below the dam; that for

said lands and for a great number of people, being, as plaintiff is informed and believes, 5,000 in number, there is no other supply available for irrigation, stock, domestic, or manufacturing purposes except the water from said canal. It is alleged that by reason of this dam the waters of Snake river have been backed up from said dam and to and beyond plaintiff's premises and have destroyed the current in the river by means of which plaintiff's water wheels were driven and made to revolve and raise the water to the elevation required for distribution over plaintiff's lands. It is alleged that it is now impossible for plaintiff to so arrange or change his said dams or water wheels or flumes, or to build or construct other dams or water wheels or flumes that will raise any water whatever from said stream that can be used upon the plaintiff's lands, and by reason thereof plaintiff has not been able to irrigate said lands or any part thereof or to raise profitable crops thereon or to use the same as pasture lands, and will not in the future be able to irrigate said lands or to raise profitable crops or any crops thereon, as long as defendant's dam is maintained; that there is no other supply of water available for use upon said lands except the waters of Snake river; that by reason of the backing up of said water and stopping the plaintiff from using said water wheels to raise the waters of Snake river to and upon said lands and cutting off the water supply from plaintiff's lands he has been damaged in the aggregate sum of $56,650.

"In the first count of the complaint a separate and distinct cause of action is alleged in an averment that about twelve acres of plaintiff's land *has* been covered by the waters of Snake river backed up by defendant's dam, but the land is not described or its boundaries given, or any particulars stated so that the land can be identified or ascertained. To this cause of action defendant interposed a special demurrer on the ground of uncer-

tainty and the improper joinder of two separate causes of action. This special demurrer appears to be admitted.

"The defendant also interposed a general demurrer on the ground that the facts stated in the complaint do not constitute a cause of action against the defendant as to either or any of said counts. The demurrer was sustained by the Circuit Court, and the plaintiff has brought the cause to this court upon a writ of error."

The trial court recognized fully the right of the plaintiff to the volume of water actually appropriated for a beneficial purpose. It nevertheless dismissed the complaint on the ground that there was no right under the constitution and laws of the State of Idaho to appropriate the current of the river so as to render it impossible. for others to apply the otherwise unappropriated waters of the river to beneficial uses. The court did not find it necessary to deny that power might be one of the beneficial purposes for which appropriations of water might be made, but in substance held that to uphold as an appropriation the use of the current of the river to the extent required to work the defendant's wheels would amount to saying that a limited taking of water from the river by appropriation for a limited beneficial use, justified the appropriation of all the water in the river as incident to the limited benefit resulting from the use of the water actually appropriated. The court said:

"It is conceded and is beyond question, that the statute law as well as judicial authority directly protects plaintiff in all water he has actually appropriated, diverted and used, but there is no statute, nor so far as known, any judicial rulings, protecting him in the establishment and in the use of his water wheels, as he claims to, and must, use them for the diversion of water to his land."

Again:

"As by Art. 15, Sec. 3, Constitution of Idaho, all unappropriated waters are subject to appropriation, it fol-

lows that all water that plaintiff has legally appropriated belongs to him, but all other is subject to appropriation. It is unquestioned that what he has actually diverted and used upon his land, he has appropriated, but can it be said that all the water he uses or needs to operate his wheels is an appropriation? As before suggested, there is neither statutory nor judicial authority that such a use is an appropriation. Such use also lacks one of the essential attributes of an appropriation; it is not reasonable."

After pointing out the limited right of appropriation for beneficial use which had been exercised considering the quantity of water actually appropriated and the use to which that water was put, the court came to state the vast extent of the incidental appropriation, having no proper relation to beneficial use, which would result from admitting the theory that the plaintiff, because of his limited appropriation for a named beneficial use, had the power to appropriate the entire current of the river for the purpose of making his actual and limited appropriation and meager beneficial enjoyment fruitful. The court said:

"The only way in which his wheels can be used for the purpose he intended them, is to preserve the river in the condition it was when he erected them. And with what result, it may be asked. It may be stated as a fact that the banks of the river and the adjacent country sustain such relations to each other, that the latter cannot be irrigated by ditches cut from the river in its natural state and the erection of dams becomes a necessity, which of course changing the surface elevation of the water affects the plaintiff's premises and all others similarly situated. Then without the dam the Twin Falls scheme with all its present great promise fails. Not only this, but the Government is now constructing a dam across the river some distance above plaintiff for

another extensive irrigating scheme, known as Minidoka Project, which will take a large amount of the water and so much that probably there will not be enough left, especially at low stages of the river, for the full operation of the plaintiff's wheels. . . ."

Illustrating the subject, the court said:

"Suppose from a stream of 1000 inches a party diverts and uses 100, and in some way uses the other 900 to divert his 100, could it be said that he had made such a reasonable use of the 900 as to constitute an appropriation of it? Or, suppose that when the entire 1000 inches are running, they so fill the channel that by a ditch he can draw off to his land his 100 inches, can he then object to those above him appropriating and using the other 900 inches, because it will so lower the stream that his ditch becomes useless? This would be such an unreasonable use of the 900 inches as will not be tolerated under the law of appropriation. In effect this is substantially the principle that plaintiff is asking to have established."

The Court of Appeals, in affirming the decree of dismissal, did so for substantially the reasons which controlled the trial court. The Court of Appeals said (p. 44):

"The assignments of error present the single question whether the facts stated in the complaint constitute a cause of action against the defendant. It is not denied that the plaintiff has the right by appropriation to divert 1,250 miner's inches of waters of the Snake river, mainly for irrigation purposes, and it is not charged by plaintiff that this amount of water is not still in the river subject to his right of appropriation and diversion. His claim is that he cannot divert it by the means he first adopted for taking the waters from the river, and that the defendant by placing a dam across the river has deprived him of the right to the current of the river which prior to the erection of the dam rendered his means of diver-

sion available. Is this current and the means adopted for the diversion of the appropriated water part of or attached to plaintiff's right of appropriation? It is contended on the part of the plaintiff that the current of the river is necessarily appurtenant to the water location and that the means of utilizing that current is attached as an appurtenance to the appropriation. We have not been referred to any case—and we know of none—where either of these propositions has been upheld."

After elaborately reviewing the general principles upon which the law of appropriation rested, and referring to provisions of the constitution and statute law of Idaho and the decisions interpreting and enforcing the same, it was held that the extent of beneficial use was an inherent and necessary limitation upon the right to appropriate. Pointing out the disastrous results which would follow from any other view, the court said (p. 45):

"If the plaintiff were permitted to own the current of the stream as appurtenant to his right of appropriation and diversion, he would be able to add indefinitely to the water right he would control and own. There might be a great surplus of water in the stream at and above plaintiff's premises and an urgent demand for a portion of this surplus for beneficial uses, but if an appropriator above should divert a sufficient quantity to lower the current under plaintiff's water wheels so that they would not revolve, the plaintiff would have a cause of action to prevent such an appropriation. It is clear that in such a case the policy of the state to reserve the waters of the flowing streams for the benefit of the public would be defeated."

And in this connection, in conclusion, it was observed (p. 47):

"There is, furthermore, the general principle that the right of appropriation must be exercised with some regard to the rights of the public. It is not an unrestricted right.

In *Basey* v. *Gallagher*, 20 Wall. 670, 683, the Supreme Court of the United States said: 'Water is diverted to propel machinery in flour-mills and saw-mills, and to irrigate land for cultivation, as well as to enable miners to work their mining claims; and in all such cases the right of the first appropriator, exercised within reasonable limits, is respected and enforced. We say within reasonable limits, for this right to water, like the right by prior occupancy to mining ground or agricultural land, is not unrestricted. It must be exercised with reference to the general condition of the country and the necessities of the people, and not so as to deprive a whole neighborhood or community of its use and vest an absolute monopoly in a single individual.'

"In *Fitzpatrick* v. *Montgomery*, 20 Montana, 181, 187, the Supreme Court of the State of Montana, after referring to what has been just quoted from *Basey* v. *Gallagher*, said: 'While any person is permitted to appropriate water for a useful purpose, it must be used with some regard for the rights of the public. The use of water in this state is declared by the constitution to be a public use. Constitution, Art. 3, § 15. It is easy to see that, if persons by appropriating the waters of the streams of the state became the absolute owners of the waters without restriction in the use and disposition thereof, such appropriation and unconditional ownership would result in such a monopoly as to work disastrous consequences to the people of the state. The tendency and spirit of legislation and adjudication of the northwestern States and Territories have been to prevent such a monopoly of the waters of this large section of the country, dependent so largely for prosperity upon an equitable, and, as far as practical, free, use of water by appropriation.' "

We have freely excerpted from the opinions of the courts below because, in our judgment, they so clearly portray the situation and correctly apply the law to that

situation as resulting from the constitution and statutes of Idaho and the reiterated decisions of the court of last resort of that State, which are referred to in the margin,[1] that we might place our decree of affirmance upon the reasons which controlled the courts below. We, however, refer to a contention urged by the petitioner as to the existence of riparian rights in Idaho and the sanction which those rights as there recognized are deemed to give to the asserted power to appropriate the whole current of the river for the purpose of making fruitful the limited appropriation of water which was made. It is not urged that the law of appropriation does not prevail in Idaho, but it is supposed that a system of riparian rights goes hand in hand with the doctrine of appropriation and that the two co-exist and may harmoniously coöperate. But the best demonstration of the error which the proposition involves results from a consideration of the effort made to apply it in this case and the reasons advanced to sustain it. We say this because it may not be doubted that the application here sought to be made of the doctrine of riparian rights would be absolutely destructive of the fundamental conceptions upon which the theory of appropriation for beneficial use proceeds, since it would allow the owner of a riparian right to appropriate the entire volume of the water of the river without regard to the extent of his beneficial use. And the incongruity of the proposition is aptly illustrated by the arguments

[1] Constitution of Idaho, art. 14, § 3; Rev. Stat. of Idaho, §§ 3155 *et seq.;* Laws of Idaho 1903, p. 223.

*Malad Valley Irrigating Co.* v. *Campbell,* 2 Idaho, 411; *Geertson* v. *Barrack,* 3 Idaho, 344; *Conant* v. *Jones,* 3 Idaho, 606; *Wilterding* v. *Green,* 4 Idaho, 773; *Boise City Irrigation & Land Co.* v. *Stewart,* 10 Idaho, 38; *Sand Point Water & Light Co.* v. *Panhandle Development Co.,* 11 Idaho, 405; *Van Camp* v. *Emery,* 13 Idaho, 202; *Hutchinson* v. *Watson Slough Ditch Co., Limited,* 16 Idaho, 484; *Farmers' Coöperative Ditch Co.* v. *Riverside Irr. Dist.,* 16 Idaho, 525; *Speer* v. *Stephenson,* 16 Idaho, 707.

advanced to sustain it, since those arguments recur to and rest upon the common-law doctrine of riparian rights, of the duty to allow a stream to flow as it was wont and of the relative rights of all persons bordering upon the stream arising from their riparian ownership. The mis-apprehension upon which the contention rests is the assumption that because a certain character of riparian rights may exist in Idaho therefore such rights as are absolutely incompatible with the rule of prior appropriation for beneficial use may co-exist with that system. For instance, the case of *Shephard* v. *Cœur d'Alene Lumber Company,* 16 Idaho, 293, which upheld the right of a riparian proprietor to prevent another from wrongfully virtually taking his water front and cutting him off from ingress to and egress from such water front affords no ground for holding that such riparian rights exist as are wholly incompatible with and indeed destructive of the system of appropriation for beneficial use. So, again, the license given by the terms of § 3184 of the Revised Statutes of Idaho, excerpted in the margin [1] as pointed out by the court below does not confer upon such riparian owner the power to appropriate without reference to beneficial use the entire volume of a river or its current to the destruction of rights of others to make appropriations of the unused water. But the precise question we are considering has been so completely foreclosed by a ruling of the Supreme Court of the State of Idaho as to leave no room for discussion. Thus, in *Van Camp* v. *Emery,* 13 Idaho, 202,

---

[1] All persons, companies and corporations, owning or having the passory [*sic*] title or right to lands adjacent to any stream, have the right to place in the channel of, or upon the banks or margin of the same, rams or other machines for the purpose of raising the waters thereof to a level above the banks, requisite for the flow thereof to and upon such adjacent lands; and the right of way over and across the lands of others, for conducting said waters, may be acquired in the manner prescribed in the last two sections. (§ 3184, Rev. Stat. Idaho.)

the facts were these: The defendant lived above the plaintiff on a stream and was assumed as a prior appropriator to be entitled to forty-five inches of the water of the stream. The plaintiff who also was an appropriator, but subordinate to the rights of the defendant complained that the latter had not only diverted his forty-five inches, but had erected a dam in the stream so as to impede the flow to his (plaintiff's) intake and deprive him of his right of appropriation, the dam being put in place by the defendant for the purpose of holding the water so as to give him the benefit of subirrigation of certain meadow lands which he owned. It was held that the defendant, while he had a full right to draw off the forty-five inches to which he was entitled as an appropriator for beneficial use, could not by damming the stream get more than his beneficial appropriation entitled him to so as to injure the right of others to appropriate from the stream. In the course of the opinion, the court said (p. 208):

"If the defendant who lives above plaintiff is entitled to a priority for forty-five inches of water, he may unquestionably divert that quantity, but when he has once done so, he may not dam the stream below or hinder or impede the flow of the remaining stream to the plaintiff's headgate. The fact that such dams and impediments hold the water and cause a subirrigation of the adjacent meadows cannot of itself justify the maintenance of such obstructions. Whatever amount of water defendant shows himself entitled to for the irrigation of his meadows or other lands as a prior right over the plaintiff, the judgment should so decree, but beyond that he cannot go under any other pretext or claims for the natural condition of the stream. In this arid country where the largest duty and the greatest use must be had from every inch of water in the interest of agriculture and home-building, it will not do to say that a stream must be dammed so as to cause subirrigation of a few acres at a loss of enough

water to surface irrigate ten times as much by proper application.   . . ."

And the absolute untenability of the contention here made as to riparian rights was again foreclosed by the Supreme Court of Idaho in *Hutchinson* v. *Watson Slough Ditch Co., Limited,* 16 Idaho, 484.   Indeed, in that case the court referred to and adversely disposed of the view taken of the authorities here relied on as .sustaining the co-existence of the asserted riparian rights and the doctrine of appropriation. .After making a full reference to authorities, in the course of its opinion the court said (p. 491):

"A riparian proprietor in the state of Idaho has no right in or claim to the waters of a stream flowing by or through his lands that he can successfully assert as being prior or superior to the rights and claims of one who has appropriated or diverted the water of the stream and is applying it to a beneficial use.   To this extent, therefore, the common-law doctrine of riparian rights is in conflict with the constitution and statutes of this state and has been abrogated thereby.

     \*     \*     \*     \*     \*     \*     \*     \*

"Sight should not be lost of the correct principle involved in such cases, namely, that a riparian owner, as such, acquires no right to the waters flowing by or through his lands that is prior or superior to that of a locator, appropriator and user of such waters.   In other words, there is no such thing in this state as a riparian right to the use of waters as against an appropriator and user of such waters who has pursued the constitutional and statutory method in acquiring his water right.   In order to acquire a prior or superior right to the use of such water, it is as essential that a riparian owner locate or appropriate the waters and divert the same as it is for any other user of water to do so."

As we have pointed out the court below did not question the right of the plaintiff to take by proper means

from the river the quantity of water actually appropriated by him for beneficial use and our decree of affirmance will therefore not in any way affect such rights.

*Affirmed.*