## TWIN FALLS CANAL CO. v. AMERICAN FALLS RESERVOIR DIST. NO. 2.

### No. 1521.

District Court, D. Idaho, S. D.
April 7, 1931.

See, also, 45 F.(2d) 649.

James R. Bothwell, of Twin Falls, Idaho, for plaintiff.

Bissell & Bird, of Gooding, Idaho, and B. E. Stoutemyer, of Portland, Or., for defendant.

CAVANAH, District Judge.

This suit involves a determination of the question from the evidence as to the right of plaintiff to recover from defendant a proportionate part of the initial construction cost and operation expenses of the Milner dam, upon the theory that the defendant is using the dam in diverting into its canal from Snake river 1,700 second feet of storage water without contributing its part of such costs. Upon the demurrer to the amended complaint, it was thought that, as it was specifically there alleged that the defendant had entered upon and was using the reservoir and dam of the plaintiff without acquiring the right to do so, it should compensate the plaintiff for such use as the entry and use of the plaintiff's property appeared within the scope of the Fifth Amendment. The inquiry now is, Does the evidence sustain the allegations upon which that conclusion was reached? A review of the testimony presents, not only the question thus referred to, but others which the defendant now urges should defeat a recovery by plaintiff.

The first is that the action is brought against the wrong party, for the reason that the defendant district does not own, nor has it constructed or operated, the canal system in the Gooding reclamation project which it is now constructing, and the diversion of the storage water by it will not take place until some future time, and will remain under the control and direction of the United States until the project is turned over to the defendant after it is completed by the United States. Under the Reclamation Act, the title to, and the management and operation of, the works remain in the government until otherwise provided by Congress. 32 Stat. 389, § 6 (43 USCA §§ 491, 498). In a recent case decided by the Supreme Court of Texas, where an action was brought against an irrigation district which had entered into a contract with the United States, pursuant to the provisions of the reclamation laws, it was held that the action could not be maintained against the district, as the United States was still operating the project which had not been turned over to the district. The court said:

"Petition in suit for damages by reason of breaks in irrigation canal banks due to negligence in maintenance and operation against irrigation district organized under Rev. St. 1925, arts. 7622–7807, which by article 7653 was authorized to contract with United States for construction, operation, and maintenance of irrigation works, held to state no cause of action against such district, in view of sec-

tion 6 of Federal Reclamation Act (43 USCA §§ 491, 498), and provisions of contract constituting the district fiscal agent of the United States in connection with the project but reserving to the United States control of maintenance and operation until certain payments required are made—to 'maintain' meaning to hold or keep in any particular state or condition; to support; to sustain; to uphold; to keep up; to keep possession of; not to surrender; to bear the expenses of (citing Words and Phrases [First, Second and Third Series], 'Maintain'). * * *

"Duties and powers given irrigation districts under Rev. St. 1925, art. 7653, authorizing contracts with federal government for construction, operation, and maintenance under Federal Reclamation Act, 32 Stat. 388, are not to be confused with authority given irrigation districts generally by article 7656, 7765, which operate and maintain irrigation works themselves, whereas districts organized under article 7653, neither operating nor maintaining works, cannot be charged with negligence of federal government in such operation or maintenance." Malone v. El Paso C. W. I. D. (Tex. Civ. App.) 20 S.W. (2d) 815.

But the plaintiff asserts that, should it be held that the United States is the one who is now using the dam in diverting the water from the river, yet article 21 of the contract between the United States and the defendant, wherein the defendant agreed to pay all claims which may arise in favor of the owners of the Milner dam by reason of the construction of the canal in question, and diversion of water through it, grants to the plaintiff the right to maintain the present suit. It will be observed that the contract is one between the government and the defendant alone, and the provision referred to is one for the protection of the government in case it is called upon to answer for any such claims. The plaintiff is not a privy to either party thereto, and can claim no rights thereunder. The principle applicable is that "a third person cannot maintain an action on a sealed instrument to which he is not a party." Cavanaugh Bros. Horse Co. v. Gaston, 255 Mass. 587, 152 N. E. 623, 625, 47 A. L. R. 1; Hendrick v. Lindsay, 93 U. S. 143, 23 L. Ed. 855. Therefore it would seem, under the evidence, that, as the United States is the one, and not the defendant, who has at the present time title to the project and is constructing the canal in question and doing the act complained of, the present action is brought against the wrong party, although it is con-

templated that the project will at some future time be turned over to the defendant. Until that time arises and the project is turned over to it in the manner provided by law, and it does some act for which plaintiff is entitled to recover, an action against it at this time would be prematurely brought.

The conclusion thus reached disposes of the case, and a consideration of the other questions becomes unnecessary, but, as considerable testimony was taken, it would seem proper for the court to consider and dispose of some of the other contentions of the defendants as reasons why the plaintiff should not recover on the present record.

The first is that, when we come to consider the relative rights and interests in the dam, the evidence discloses clearly that the defendant has acquired from the North Side Canal Company a one-eleventh interest in the dam, in consideration of it conveying through its canal 1,000 second feet of storage water for the North Side Canal Company. The Milner dam now belongs to three parties, the plaintiff, the South Side Canal Company, owning six-elevenths interest, the North Side Canal Company, owning four-elevenths interest, and the defendant district one-eleventh interest. They are tenants in common in the dam, and are entitled to use it in proportion to their interests. The North Side Canal Company had the right to convey to the defendant an undivided one-eleventh interest in the dam, held in common by it and the South Side Canal Company. The conveyance was not a specified divided interest in the property held in common, but an undivided interest, which constitutes the grantee a tenant in common with the grantor. Idaho C. S. §§ 5328, 5372; Powell v. Powell, 22 Idaho, 531, 126 P. 1058; Gordon v. San Diego, 101 Cal. 522, 36 P. 18, 40 Am. St. Rep. 73; Verdugo Canon Water Co. v. Verdugo, 152 Cal. 655, 93 P. 1021.

Assuming that the defendant should be required to pay its proportionate share of the initial construction and operating costs, when measured by the standard as to their respective diversion capacities from the river, the plaintiff has 3,600 second feet, the North Side Canal Company 3,300 second feet by its own diversion, and 1,000 second feet of continuous flow rights in the new canal of the defendant, plus their storage rights, and the defendant 1,700 second feet, in the new canal. Plaintiff's right of 3,600 second feet equals 7,200 acre feet per day. Figuring then plaintiff's right of 7,200 acre feet times 365 days in the year, it would equal 2,-

628,000 acre feet per annum, and, in addition to that, it has 92,000 acre feet of storage water rights in Jackson Lake, and 145,000 acre feet of storage water in American Falls reservoir, making the total diversion rights 2,865,000 acre feet per annum. The North Side Canal Company has 3,300 second feet per day, or 6,600 acre feet, or 2,407,000 acre feet per annum, and, in addition to that, it has storage water in the American Falls reservoir of 150,000 acre feet, making its total diversion right 2,559,000 acre feet per annum. The right of the defendant is 400,000 acre feet each season of the storage water of American Falls reservoir. Thus the total diversion rights at Milner dam of the three parties is 5,824,000 acre feet per annum. Figuring then on that basis, the defendant being a tenant in common, it would be entitled to divert or to use the dam up to a diversion capacity of one-eleventh of the total capacity of 5,824,000 acre feet per annum, which is 529,454 acre feet, or 129,450 acre feet in excess of its present stored water right of 400,000 acre feet which it proposes to divert at its headgate on the river. Therefore it would seem that, if the rights of these three owners of the dam are measured according to their water rights, which are raised in the river by the dam to the necessary elevation so that they can be diverted through their canals, then the defendant has already paid more than its proportionate part of the initial cost of the construction of the dam by purchasing the one-eleventh interest in it from the North Side Canal Company. The parties assert that they are willing to contribute their proportionate part of the maintenance and operating costs of the dam.

■ This, then, leads to the consideration of the further thought, which is really the difficult problem involved in the case under the constitution and laws of the state, when applied to the evidence, as to the right of plaintiff to require subsequent appropriators above the dam on the stream to contribute to the costs of construction and operation of the dam. The dam was constructed for the purpose of raising the water in the river to a certain elevation above the bed of the river, so that the water rights of the plaintiff and the North Side Canal Company could be diverted through their canals. It was not intended to be used as a reservoir, storing water to be drawn upon whenever desired. Its backwater extended to about 25 miles up the river, and the point of diversion of the canal in question is about 400 feet above the dam. There is a sharp conflict in the evidence as to what effect the water to be diverted through the new canal would have upon the operation of the dam or interference with other rights. Engineers of equal reputation and ability who have testified differ as to that. Some say that the additional 1,700 second feet when placed in the river would cause greater pressure upon the dam, and cause confusion and complications in its operation, while others say no. But, however that may be, the extent of the rights of plaintiff is that of an easement, limited to the right to the use of the dam, so far as may be necessary for the construction, maintenance, and use of its canals and ditches. 26 Stat. 1102, § 21 (43 USCA § 949). The easement was granted by the United States upon its public lands (Natoma Water & Mining Co. v. Hancock, 101 Cal. 42, 31 P. 112, 35 P. 334, 337; Whitmore v. Pleasant Valley Coal Co., 27 Utah, 284, 75 P. 748), and is limited to the purposes specified in the statute. The mere fact that the plaintiff has constructed a dam, and by doing so has raised the bed of the stream to an elevation which it found necessary in order to divert its water through its canal, would not give to it the right to require subsequent appropriators of water from the stream or users of storage water flowing in the stream to contribute to the initial cost of construction of the dam.

■ The right to divert and appropriate the unappropriated waters of a natural stream to beneficial uses shall never be denied under the Constitution of the state. Idaho Const. art. 15, § 3. This principle applies to the right to the use of such stream as a highway to carry storage water from a reservoir. Idaho C. S. § 5624. The regulation of such use is by the statute of the state vested in the Commissioner of Reclamation and the water masters on the stream. Idaho C. S. §§ 5606, 5607, and 5611. Thus it will be seen that the right to appropriate water or to use a public stream for that purpose is not an unrestricted one, and must be exercised with regard to the rights of the public. The permission here given to the plaintiff is a mere license to use the method of construction of a dam for raising water to a level so that it can be diverted through its canal for distribution on its lands. To say that it can go further than that and require other appropriators or users on the stream who may be above its dam to contribute to the cost of construction of the dam would result in such a monopoly as to work disastrous consequences to the public. If it can require the defendant to contribute the large amount demanded, then it

could go up the stream for a distance of 25 miles and require all subsequent appropriators or those who may use the stream to carry storage water from American Falls reservoir to contribute to the construction cost of the dam. Such a right in principle is denied by the Ninth Circuit Court of Appeals in the case of Schodde v. Twin Falls Land & Water Co., 161 F. 43, which was affirmed by the Supreme Court. Schodde v. Twin Falls Land & Water Co., 224 U. S. 107, 32 S. Ct. 470, 56 L. Ed. 686.

The fact that plaintiff has created an artificial condition in the river by the construction of the dam, which has resulted in backing up the water in the stream for 25 miles, and to an elevation which others may utilize, would not give to it the exclusive right to compel defendant to contribute to the initial cost of the dam, for they have the right to use the stream in the condition they may find it as long as they do not injure or interfere with plaintiff in diverting its water. They have the right in the first instance to use the stream in its natural condition, and probably would have preferred to install a wheel or adopt other methods to lift the water from the river. Otherwise the plaintiff would have the exclusive right to dictate to them to accept its dam as the method, regardless of the difference there may be in the cost to them.

The contention of the plaintiff that the defendant should contribute to the original cost of the dam, which was constructed some years ago, but should have no interest therein, runs counter to all legal and equitable principles requiring a conveyance of property to the one paying for the same. Here plaintiff adopts the theory that the defendant pay to it a part of the original cost and operation expenses of the dam, and, after doing so, it shall have no interest therein or voice in its operation. This would seem inequitable, although plaintiff says the defendant would only be paying for the use of it, and the measure of relief under such circumstances would not be a proportionate part of the initial cost of the dam. Should plaintiff retain the interest in the dam and the sole right of operation, without transferring the interest represented by the amount defendant is requested to pay for the original cost, it could not expect to retain the dam and at the same time ask the defendant to pay for a part of its cost.

The conclusion reached requires a dismissal of the bill, and that defendant recover its costs.