MCCLELLAN, APPELLANT, v. HURDLE ET AL., APPELLEES.

1. INSTRUCTIONS.

An instruction should not be given when there are no facts in evidence upon which it can be based.

2. ERROR, WHEN IMMATERIAL.

Although an instruction ought not to have been given, yet when it appears from the verdict that it occasioned no injury, it will be regarded as harmless error.

3. PRACTICE.

It is not error to refuse instructions requested, when their substance has been given in others.

4. WATER RIGHTS.

It is an invasion of the rights of a prior appropriator to divert water from a stream—surface or subterranean—by means of dams, wells or pumps, whereby the flow of water is diminished, notwithstanding such diversion is by the owner of land through which such water flows or percolates, and upon his own premises.

*Appeal from the District Court of Weld County.*

APPELLANT was the owner of, or in the legal possession of, 400 acres of land in Weld county. In July, 1886, he filed the necessary papers to secure his right, and subsequently excavated and constructed a ditch from Lone Tree creek to irrigate his land. The description of the stream or water course from which water was taken is given in the complaint

as follows: " (2) That the said Lone Tree creek is a natural stream taking its rise near Granite Pass, in the state of Wyoming, and flows southeasterly through Weld county, Colorado, and empties into the Cache La Poudre river. That said Lone Tree creek has its rise in, and is fed by, melting snows, seepage, surface and subterranean drainage. That the said stream, at times and places, flows above the ground, in an open channel, and, at other times and places, below the surface, as a subterranean current. The surface water and underflow of said stream are connected and coexist. That at certain times of the year the surface flow prevails throughout the whole course of the said stream, which is at all times plainly marked; the course being indicated by a channel consisting of banks and sides, and by rank vegetation in places, indicating the place and presence of the subterranean channel." It is also alleged that appellant's rights and appropriation of the water were prior to any rights of appellees, who were owners and occupants of land lying above that of appellant on the same stream. The injuries complained of are stated as follows: " That about the month of June, 1889, said defendants sank a well, and put in an irrigation pump, at or near the northwest corner of his said lands, and at or near the bank of said Lone Tree creek, and put the same in operation for the irrigation of their lands, and have since continued to operate the same. That defendants have taken and drawn off the underflow of water in said creek by means of said pump, thereby depreciating the flow of water in said creek at the point where plaintiff's head gate is located, and diminishing the supply of water to which he is entitled, and has heretofore appropriated. That defendants have since that date further diverted the flow of water of Lone Tree creek to their own advantage, and the damage of plaintiff, by placing dams in the channel above plaintiff's head gate thereof, and turning the waters of said stream into their well, and into ditches constructed by themselves and others aforesaid, and using the same upon their said lands. That by reason of said acts and doings of defendants in diverting the

said subterranean and surface flow of said stream to their
own use, and in denial of the rights of plaintiff, plaintiff is
damaged in the sum of five thousand dollars.   (5) That the
said defendants have since said last mentioned date hitherto
maintained, and still do maintain, said well, dams, and ditches,
and pumping arrangements, for the diversion of the waters
flowing in said Lone Tree creek, and threaten, during the
irrigating season of 1891, to continue the diversion and use
of said waters.   That, as plaintiff is credibly informed and
believes, the defendants are now engaged in sinking wells to
reach said subterranean channel, and putting other pumps
therein, and on the said described lands, for the avowed pur-
pose of drawing off and diverting the waters of said stream
to their own use, which, if done and consummated, will re-
sult in the further injury and damage to this plaintiff."
Then prays that his appropriation of water, to the extent ap-
propriated, be declared prior to that of appellees, and asking
for an injunction restraining the pumping, use, and applica-
tion of the water by appellees.   By the answer it is denied
that Lone Tree creek, or any portion of it, "flows beneath the
ground as a subterranean stream, and is connected with its
surface flowage, and that they coexist."   Admits the sinking
of the well, and the use of an irrigation pump to raise the water
for purposes of irrigation.   "Denies that defendants have
taken and drawn off the underflow, as alleged in said com-
plaint, or in any way interfered with the flow of said stream,
by means of said well and pump, or otherwise, so as to de-
preciate the flow of water in said creek at the point where
plaintiff's head gate is located, and to which he is entitled.
Denies that defendants have since said date further diverted
the flow of water of Lone Tree creek to their own use and
advantage, and to the damage of plaintiff, by placing dams
in the channel thereof, and turning the water of said stream
into their said well, and into ditches constructed by them-
selves or others."   A jury was had to try the issues present-
ed, which was given the following instructions : " (2) The
court instructs the jury that if you find, from the evidence,

defendants constructed a dam across Lone Tree creek, and you further find that the plaintiff was not damaged thereby, you cannot find damages in favor of plaintiff against the defendants for that cause.   (3) The court instructs the jury, as a matter of law, that water that percolates through the soil, without an evident and well known channel, is regarded as a part of the land, and belongs to the owner thereof, and he may make such use of the water as he sees fit while it remains on or under his land.   (4) The jury are instructed that digging wells close to a stream, so that the waters of the stream necessarily percolate into such wells, thus diminishing the water previously appropriated, is but doing indirectly what the law forbids being done directly, and will not be allowed.   And if the jury believe from the evidence that defendants have by such means drawn from Lone Tree creek water previously appropriated by plaintiff, they will assess his damages upon this branch of the case in such amount as he has been shown to have suffered." The verdict was for the defendants, (the appellees.) Judgment upon the verdict, from which an appeal was taken to this court.

Mr. JAMES W. McCREERY, for appellant.

Messrs. A. C. PATTON and H. E. CHURCHILL, for appellees.

REED, J., after stating the facts, delivered the opinion of the court.

The case is one of peculiar interest, and involves questions that have never been fully determined in this state.   The attempted denials in the answer of the allegations in the complaint are inartificially drawn, and some of them are clearly open to the criticism of being "negatives pregnant;". but the attempt and intention of the pleader to make them denials is apparent.   Consequently, at this stage of the proceeding, it would probably be wiser to treat them according to the in-

tention of the pleader than to apply strictly technical rules of pleading. The court below evidently regarded them as denials, tendering issues of fact. I cannot, as urged in argument by the learned counsel of appellant, regard the question of damages as the sole question of fact submitted to the jury. Although it was an equity case, it clearly appears from the instructions of the court, and the acceptance of a general verdict, that all issues of fact made by the pleadings were submitted to the jury for its determination. The prior appropriation of the water of Lone Tree creek to the extent claimed, the construction of the ditch, and the application of the water to his land, appear to have been conceded. If not conceded, they were fully established by the evidence. Hence the first, fundamental and important question to be found by the jury was whether appellant's rights were invaded, and the volume of water to which he was entitled by priority of appropriation had been diminished by the acts of appellees. The court instructed the jury "that water that percolates through the soil without an evident and well-known channel is regarded as part of the land, and belongs to the owner thereof, and he may make such use of the water as he sees fit, while it remains on, in, or under his land." It is probably safe to say that it is a matter of no moment whether water reaches a certain point by percolation through the soil, by a subterranean channel, or by an obvious surface channel. If by any of these natural methods it reaches the point, and is there appropriated in accordance with law, the appropriator has a property in it which cannot be divested by the wrongful diversion by another, nor can there be any substantial diminution. To hold otherwise would be to concede to superior owners of land the right to all sources of supply that go to create a stream, gardless of the rights of those who previously acquired the right to the use of the water from the stream below. Strictly and technically, the instruction should not have been given. There were no facts in evidence upon which it could be properly based. But, in view of the fact that nearly all the evidence was directed to the question

of whether the water supply was diminished by the acts of the defendants, the finding by the jury that it was not, renders the instruction harmless. The other instruction (No. 4) given by the court appears to embrace, and clearly state, all the law of the case. The refusal of the court to give the instructions prayed by the plaintiff cannot be regarded as error. All that should have been given were, in substance, given by the court.

Streams of the character described in the complaint are frequent throughout the entire arid portion of the continent, and their existence and peculiarities cannot be ignored, being well-defined surface streams with well-defined channels, for long distances, then, for miles, sunken, until uniting with another stream, but having, topographically, all the physical characteristics of a stream,—a bed, banks, valley, etc., at times of high water, being, its entire length, a running surface stream, and, in low water, or droughts, running short distances, standing in pools, sinking into gravel or loose material in its bed, percolating through or passing under it, and reappearing at some point below, but still delivering at different points a greater or less volume of water,—sometimes at the surface, sometimes much below. It is not necessary to legally define water courses having these peculiar characteristics. They are, as conduits of water, such source of supply as to furnish an appropriator a legal basis for the appropriation of the available water. In the case of a running surface stream the question of appropriation is easy of solution ; but not so in a sunken stream, particularly at a point where the water is an indefinite distance below the surface. Under such circumstances it becomes at once apparent that to appropriate and utilize the water an impervious dam must be constructed, and carried down to an impervious base, to stop and retain the subterranean water, and raise it to the ditch. Whenever such adequate provision is made, any act diminishing the quantity that would naturally reach the dam, and add to the supply, up to the limit of the appropriation,— whether by diversion upon the surface, the sinking of wells

and using pumps, or otherwise,—would be actionable. The, trouble in the case was in the want of proof. It was in evidence that appellant had constructed a dam across the stream to supply his ditch, but there is nothing in regard to the character of the dam. It may have been only a surface dam, which, although sufficient for running surface water, may have been wholly inadequate for retaining and utilizing the water at any depth below the surface. The efficiency of the dam to stop, retain, and apply the sunken water should have been shown; for if the water found and taken by the appellees, by sinking wells and pumping, would, in its natural course, have passed under the dam, the available supply could. not have been materially diminished. It should also have been shown that the water taken by appellees was intercepted, and would, by the laws of gravity, following the natural plain of drainage, have reached appellant's premises. The testimony was conflicting, vague, and indefinite, based upon the casual observation of different individuals at different times and perhaps under very varying natural conditions. Opinions were substituted to establish physical facts that could have been established by actual tests and practical demonstration. The appellant did not, by proper and competent testimony, make a case entitling him to an injunction restraining the pumping by appellees, and such relief was properly refused. It was shown that appellees had formerly constructed a dam, intercepted surface water, and turned it into their ditch. If such obstruction and diversion had not been abated, and appellant's available supply of water was by such acts diminished, and less than his appropriation, appellees should have been restrained from such interference. The evidence being so vague, conflicting, and indefinite, the verdict of the jury must be sustained, and the decree of the court based upon it,

*Affirmed.*