[No. 2364.]

### THE OGILVY IRRIGATING AND LAND COMPANY v. INSINGER.

1. **Water Rights—Tributaries.**

A tributary to a stream which a prior appropriator of water from the stream would be entitled to prevent a subsequent appropriator from diverting, is not limited to a running natural surface stream which empties into the stream from which the appropriation is made.

2. **Water Rights—Tributary Sources—Pleading.**

In an action by a prior appropriator of water from a stream to restrain a subsequent appropriator from diverting waters which contributed to the supply of the stream, a complaint which alleged that the water diverted by defendant consisted of (1) waste and seepage water arising under certain land, (2) drainage water from said land collected by drainage ditches and discharged into the stream, (3) sewer and waste water from a city sewer, (4) waste and seepage water from the lateral ditches of an irrigation canal, and (5) waste and seepage water from a mill power canal, and that prior to the diversion of the same by defendant all the water from the enumerated sources was discharged into the stream above plaintiff's headgate and contributed to the supply thereof, sufficiently alleged the diversion of tributary waters of the stream to make the complaint good as against a general demurrer on that ground.

3. **Water Rights—Percolating and Drainage Water—Pleading.**

In an action by a prior appropriator of water from a stream to restrain a subsequent appropriator from diverting the tributary waters of the stream, if the defendant relies upon the defense that he has appropriated only percolating, drainage and

seepage waters which he has acquired a right to under section 2269 Mills' Ann. Stats., such defense must be presented by answer, and cannot be raised by demurrer.

4. Laches—Pleading.

Laches is not a ground of demurrer, but should be raised by answer.

*Appeal from the District Court of Larimer County.*

Mr. H. E. CHURCHILL, for appellant.

Mr. H. N. HAYNES, for appellee.

MAXWELL, J.

The complaint avers the corporate capacity of plaintiff; the ownership of an irrigating canal constructed in 1882, whereby 91.066 cubic feet per second of time of the waters of the Cache la Poudre river were appropriated for irrigating 3,500 acres of land owned by the stockholders of plaintiff and others, lying under the canal, for whom and itself, action was brought; that the headgate of plaintiff's canal is in the northeast bank of the river; that the source of supply for plaintiff's canal is the Cache la Poudre river, together with its several tributaries, and the waste, seepage, surface and drainage water coming into the said river above the headgate of plaintiff's canal; that owing to the lateness of plaintiff's appropriation, its supply of water, except during the flood season, is almost entirely dependent upon the accretions to said river below the dam and headgate of No. 3 canal, which dam and headgate is located upon said stream about 9 miles above the headgate of plaintiff's canal; that between plaintiff's headgate and the headgate of No. 3 canal, the only appropriation prior to plaintiff's is that of Mill Power canal; that, except during the flood season, the amount of water which plaintiff's canal is able to obtain and divert during the irrigating season,

has been from 30 to 40 cubic feet of water per second
of time, which has been used for the irrigation of
lands lying under plaintiff's canal; that its entire
appropriation and all the water it can derive from
the river and its accretions are necessary to be
diverted to irrigating the lands lying thereunder, and
the continued use and enjoyment of all the accretions
of the said river below the headgate of No. 3 canal
are necessary for such purposes; that in November,
1893, defendant commenced the construction of an
irrigation ditch; that such ditch does not have its
headgate in the Cache la Poudre river, but said ditch
is so constructed as to intercept waters flowing into
said river and augmenting the water supply thereof;
that the initial point or headgate of said ditch is
located about a mile above the headgate of appel-
lant's canal (describing the point) and at a point
about 1,000 feet west of the Cache la Poudre river;
that from said point said ditch extends in an easterly
direction and crosses said river a distance of about
a mile and a half; that said ditch so constructed has
a carrying capacity of upwards of 5 cubic feet of
water per second of time, and such quantity of water
is collected, diverted and used by defendant's ditch;
that the water so collected, diverted and used by
defendant's ditch consists of the waste and seepage
water arising under certain sections of land south
and west of the Cache la Poudre river; also the
drainage waters from said lands collected by drain-
age ditches and otherwise, and discharged into the
said river; also the sewer and waste water from the
sewer system of the city of Greeley, which is located
upon said land; also the waste, seepage and drain-
age water from the lateral ditches of No. 3 canal
used in irrigating said lands, and the waste and seep-
age water from the Mill Power canal used in part
for the irrigation of said lands and in part for

mechanical purposes; that for many years prior to the construction of defendant's ditch all of said waste water flowed into the river above the headgate of plaintiff's canal and was a part of the water diverted by its canal, and had been a source of supply for said river, augmenting the water supply thereof, and during each irrigating season had been used by plaintiff and its stockholders in irrigating the lands lying under its canal; that since the construction of defendant's ditch all of the said water, to the amount of upwards of 5 cubic feet per second of time, has been diverted thereby, to the injury and damage of plaintiff, its stockholders and customers; that all of the water of said river and its tributaries and accretions from every source and of every character and nature whatsoever are necessary to be diverted and used by plaintiff in the irrigation of the lands lying under its canal; that since the construction of defendant's ditch and the diversion and use of the water thereby, plaintiff and its water consumers have not been able to procure from said river a sufficient supply of water to irrigate and water the crops growing upon the lands lying under its canal; that the continued diversion of said water by defendant will result in irreparable injury and damage to plaintiff, its stockholders and water consumers, and that plaintiff has no speedy and adequate remedy at law.

Prayer, that defendant be enjoined from diverting and using any water by means of said ditch from the Cache la Poudre river or any of its sources of supply, and from intercepting or diverting any waste, seepage, flood or drainage water, or water from the sewer system of the city of Greeley, which are sources of supply for said river.

A demurrer was interposed to the complaint, predicated upon the grounds:

First, That it did not state facts sufficient to constitute a cause of action.

Second, That it was ambiguous, unintelligible and uncertain, specifying wherein.

The demurrer was sustained. Plaintiff electing to stand by its complaint, the complaint was dismissed and the cause brought to this court by appeal.

The argument in support of the first ground of demurrer is based upon several propositions set forth therein; and a statement here of these propositions, in the language of the demurrer, may aid to clearness of statement, accuracy of conclusion and perhaps remove some elements of debate.

"(a)  It does not appear from said complaint that defendant derives the water supply for his irrigating ditch from the Cache la Poudre river, or any natural stream or tributary thereof.

"(b)  It does not appear from said complaint that this defendant, by means of his irrigating ditch or otherwise, diverts any waste, surface, seepage or drainage water from the Cache la Poudre river after the same has found its way into said river.

"(c)  It does not appear from said complaint that at the time of the construction of plaintiff's ditch, or when an appropriation therefor vested and was first utilized, any waste, seepage, surface, percolating, drainage or sewerage water, on the lands mentioned in complaint now drained by means of defendant's ditch, found their way to the Cache la Poudre river from any natural channel or otherwise.

"(d)  It is shown in said complaint that the principal part, if not all of the waters appropriated by defendant through his ditch, is the result of a drain and sewer of the city of Greeley, and it does not appear therefrom that defendant did not receive a license from said city to discharge the water result-

ing from said artificial sewer and drain onto his land.

"(e)  It appears affirmatively from said complaint that defendant for six years and six irrigating seasons has been using said sewerage and drainage water for the irrigation of his lands, during all of which time plaintiff has taken no steps to restrain said use, whereby plaintiff is guilty of such laches as to estop it from prosecuting this action and is without standing in a court of equity."

An examination of the complaint discloses that it avers that the 5 cubic feet of water collected, diverted and used through and by means of defendant's ditch, is derived from five sources:

1.  Waste and seepage waters arising under certain sections of land.

2.  The drainage water from said lands collected by drainage ditches and otherwise, and discharged into said river.

3.  The sewer and waste water from the sewer system of the city of Greeley, which is located upon said lands.

4.  The waste, seepage and drainage water from the lateral ditches of No. 3 canal used in irrigating said lands.

5.  The waste and seepage water from the Mill Power canal, used in part for the irrigation of said lands and in part for mechanical purposes.

Conceding that it is necessary that the complaint should allege that defendant derives his water supply from the river, or some natural stream or tributary thereof, it appears from the complaint that, previous to the construction of defendant's ditch, all the water from the sources above enumerated was discharged into the river above appellant's headgate, constituted a source of supply thereof, and was diverted and used by appellant by and through its ditch for irrigating purposes. In the sense of contributing to the

water supply of the river, the above enumerated waters were tributary to said supply.

Appellee, however, insists that "tributary" must be construed to mean "a running natural stream which empties into another stream." This limited definition of "tributary" cannot be adopted.

A condition of affairs can be conceived whereby an irrigating canal or ditch, without headgate or intake from a natural stream or tributary thereof, might be constructed parallel to a natural stream, or parallel to an existing canal or ditch, and thereby appropriate and divert large volumes of water, which prior to its construction found their way by seepage, drainage and percolation to the stream, to the detriment and injury of appropriations prior to the construction of such canal or ditch.

No case has been cited, and an exhaustive examination of the authorities has failed to disclose one, which holds that the limited construction of "tributary" contended for by appellee is applicable to our irrigation laws, or that it must be alleged and proven that waters diverted by the junior appropriator constituted a running surface stream within well-defined banks or channels.

In *McClellan v. Hurdle,* 3 Colo. App. 430-434, 33 Pac. 280, this court has said:

"It is probably safe to say that it is a matter of no moment whether water reaches a certain point by percolation through the soil, by a subterranean channel, or by an obvious surface channel. If, by any of these natural methods, it reaches the point, and is there appropriated in accordance with law, the appropriator has a property in it which cannot be divested by the wrongful diversion by another, nor can there be any substantial diminution. To hold otherwise would be to concede to superior owners of land the right to all sources of supply that go

to create a stream, regardless of the rights of those who previously acquired the right to the use of the water from the stream below.''

The foregoing is decisive adversely to the contention of appellee of the first proposition advanced in support of the general demurrer.

If it be true that appellee has appropriated only percolating, drainage and seepage waters and that his rights were acquired under the act of April 17, 1889, Mills' Ann. Stats., section 2269, as is contended in argument in support of the second proposition, this is a matter of defense and should be raised by answer and cannot be raised by demurrer.

An examination of the complaint clearly indicates that it is alleged, that appellee is diverting and appropriating water from four other sources than the drain and sewer of the city of Greeley; and while it may be true that the real bone of contention in this case is the discharge of a sewer of the city of Greeley, and that appellee is the licensee of such city, and in this regard this is likewise a matter of defense and should be raised by answer and, in any event, cannot be urged as a defense to the allegations of the complaint as to the appropriation and diversion of water arising from the other four sources of alleged supply.

We cannot perceive the applicability to the record before us of the principles of the law of percolating water and sewage, and for this reason do not discuss the numerous authorities cited by counsel upon these points.

The remaining proposition urged in support of this ground of demurrer is the *laches* of appellant. Laches is not a ground of demurrer; the usual and proper method of raising it is by answer.—*French v. Woodruf,* 25 Colo. 339-352; *Fairplay v. Park County,* 29 Colo. 57-60.

From a critical examination of the complaint we

cannot say, that it presents defects so substantial in their nature and so fatal in their character as to authorize the court to say—taking all the facts to be admitted—that they furnish no cause of action whatever.—*Herfort v. Cramer*, 7 Colo. 483-488.

From a careful examination of the complaint we arrive at the conclusion that the second ground of demurrer, that the complaint is ambiguous, unintelligible and uncertain, is not well taken.

The judgment will be reversed and the cause remanded.                                        *Reversed.*