419 P.2d 470

Gilman MARTINY and Grace Martiny, hus-
band and wife, Plaintiffs-Appellants,

v.

Arthur WELLS, Defendant-Respondent.

No. 9866.

Supreme Court of Idaho.

Oct. 24, 1966.

Furchner, Anderson & Beebe, Blackfoot, Fred H. Snook, Salmon, for appellants.

Sherman F. Furey, Jr., Salmon, for respondent.

TAYLOR, Justice.

At the times here involved both parties were owners of rights to the use of water for irrigation from Spring Creek, in Lemhi County. Both rights were adjudicated by the Morrow-Wagoner decree in 1910. The right held by plaintiffs (appellants) was decreed to have a priority date of February 10, 1893, and the right held by defendant (respondent) was decreed to have a priority date of July 15, 1900.

Plaintiffs brought this action for damages resulting from defendant's alleged interference with plaintiffs' water right and to enjoin future interference therewith.

Running generally from southeast to northwest and roughly parallel to a bluff a short distance to the northeast, Spring Creek traverses a marshy, swampy area and is fed by springs on both sides. Mr. Wells' ditch also extends from the southeast to northwest, and lies between Spring Creek and the bluff roughly parallel to the creek, and varying from one-eighth to one-quarter mile distant from the creek. The ditch draws water from springs upstream from plaintiffs' point of diversion on Spring Creek. Defendant Wells has no other diversion from Spring Creek.

The controlling issue presented on this appeal is whether the water from the springs, along the upper side of the Wells ditch, which flows into the ditch, is tributary to Spring Creek. Wells contends that the water diverted by his ditch is not tributary to Spring Creek; that it is percolating water from the swampy, marshy area traversed by the ditch; that he and his predecessors had "continuously, nortoriously, adversely, and under claim of right" recovered and used such water since 1900. He also alleged that if the water taken by means of his ditch were not recovered and used by him, it would be wasted.

Among other things, the trial court found:

"10. Martiny was without water in May, 1960, and was short of his water right during the years 1960, 1961, 1962, and 1963. Said years were relatively dry years, and the water in the general area was less than normal."

"18. The swamp area around the springs holds the water, and only a por-

tion of the flow of the springs reaches Spring Creek."

In its conclusions of law the court held:

"19. The best use of the water flowing from the springs and the swampy area around the Wells ditch is the collection of said water in the Wells ditch for irrigation of the property served by said ditch as aforesaid."

"20. Martiny has no right to the water collected and flowing into the Wells ditch."

In the judgment:

"3. Defendant is decreed to be the owner of up to 100 inches of water flowing in said Wells Ditch with priority date of 1910 for irrigation of the lands and premises hereinafter described and to which said lands, said water right is hereby made appurtenant."

Plaintiffs' application for injunction was denied and plaintiffs were enjoined from interfering with the flow of 100 inches of water in the Wells ditch.

■ The evidence does not support the court's finding that the water collected by the Wells ditch was not tributary to Spring Creek. The record conclusively shows that the terrain involved slopes from the foot of the bluff on the northeast to Spring Creek. on the southwest; that there are natural swales running from the springs below the bluff in a southwesterly direction to Spring Creek; that in the construction of the Wells ditch, dykes or levees were built across these swales which impound the water arising above the ditch and cause it to flow through the ditch to the northwest to defendant's land. In the absence of the Wells ditch, water from the springs above the ditch would follow the natural swales and, except for the part thereof lost by evaporation or percolation in the swampy areas, would flow into Spring Creek. At times in the past some of these dykes have been perforated by muskrats and the water thus released flowed down these channels to Spring Creek. Twice one such dyke was cut by the watermaster and the water so released flowed to Spring Creek.

All of the witnesses who testified on the point, stated that in the absence of the Wells ditch, water from the springs above the ditch would flow into Spring Creek through the natural channels or swales. Plaintiff Martiny and his witnesses (five in all) were of the opinion that the water thus reaching Spring Creek from such springs would be substantial in volume. Two of defendant's witnesses thought the amount of such water reaching Spring Creek would not be appreciable. Defendant testified that in his opinion out of 100 inches flowing in his ditch, 25 to 30 inches would reach Spring Creek. And the court found that "only a portion of the flow of the springs reaches Spring Creek."

The record is thus conclusive that the water from the springs and swamps above the Wells ditch is tributary to Spring Creek; that the diversion accomplished by means of the ditch constitutes a diversion from Spring Creek, and the water flowing in the ditch to the extent of 100 inches is the water decreed to defendant's predecessors from Spring Creek by the Morrow-Wagoner decree.

A situation parallel to that here considered was discussed by the Colorado court in Ogilvy Irrigating & Land Co. v. Insinger, 19 Colo.App., 380, 75 P. 598, at 599 (1904), as follows:

"Appellee, however, insists that 'tributary' must be construed to mean 'a running natural stream which empties into another stream.' This limited definition of 'tributary' cannot be adopted. A condition of affairs can be conceived whereby an irrigating canal or ditch, without head gate or intake from a natural stream or tributary thereof, might be constructed parallel to a natural stream, or parallel to an existing canal or ditch, and thereby appropriate and divert large volumes of water which prior to its construction found their way, by seepage, drainage, and percolation, to the stream,

to the detriment and injury of appropriations prior to the construction of such canal or ditch. No case has been cited, and an exhaustive examination of the authorities has failed to disclose one, which holds that the limited construction of 'tributary' contended for by appellee is applicable to our irrigation laws, or that it must be alleged and proven that waters diverted by the junior appropriator constituted a running surface stream, within well-defined banks or channels. In McClellan v. Hurdle, 3 Colo. App. 430–434, 33 P. 280, 282, this court has said: 'It is probably safe to say that it is a matter of no moment whether water reaches a certain point by percolation through the soil, by a subterranean channel, or by an obvious surface channel. If by any of these natural methods it reaches the point, and is there appropriated in accordance with law, the appropriator has a property in it which cannot be divested by the wrongful diversion by another, nor can there be any substantial diminution. To hold otherwise would be to concede to superior owners of land the right to all sources of supply that go to create a stream, regardless of the rights of those who previously acquired the right to the use of the water from the stream below.' "

■ The evidence also fails to support a finding or judgment in favor of defendant based upon adverse use or laches. The evidence shows and the court found that plaintiffs' prior right was not interfered with until the spring of 1960. This action was commenced May 25, 1963. Hence, the requisite five years adverse use was not shown. The evidence on the part of defendant, that he and his predecessors had used the water flowing in his ditch uninterrupted from about 1930, "and possibly since the year 1910," avails defendant nothing in support of his claim based upon either adverse use, or upon laches.

"One of the essential elements of claim of prescriptive right to the use of water for irrigation, is that the claimant must show that he has used the water during each of the irrigation seasons of the five-year period when it was actually needed by the prior owner." Mountain Home Irrigation District v. Duffy, 79 Idaho 435, 440, 319 P.2d 965, 967 (1957).

See also: Linford v. G. H. Hall & Son, 78 Idaho 49, 297 P.2d 893 (1956); Follett v. Taylor Bros., 77 Idaho 416, 294 P.2d 1088 (1956); Head v. Merrick, 69 Idaho 106, 203 P.2d 608 (1949); Village of Fairview v. Franklin Maple Creek Pioneer Irr. Co., 59 Idaho 7, 79 P.2d 531 (1938).

The court found that during all of the years prior to 1960, plaintiffs' prior right was satisfied.

■ Wasting of irrigation water is disapproved by the constitution and laws of this state. Idaho Constitution, art. 15; I.C. §§ 43–104, 42–222, 18–4302. As we said in Mountain Home Irrigation District v. Duffy, supra, it is the duty of a prior appropriator of water to allow the use of such water by a junior appropriator at times when the prior appropriator has no immediate need for the use thereof. See also, Ward v. Kidd, 87 Idaho 216, 392 P.2d 183 (1964). Hence, during the years prior to 1960, the use of the water from Spring Creek by defendant was not adverse to plaintiffs' right. Likewise, such use by defendant during those years would give rise to no right of action by plaintiffs to enjoin such use, and plaintiffs could not be held to have lost their prior right by laches or acquiescence. Upon this latter point this case is to be distinquished from Hillcrest Irrigation District v. Nampa & Meridian Irrigation District, 57 Idaho 403, 66 P.2d 115 (1937), relied upon by defendant. In that case, the right asserted by the defendant was one which defendant could have asserted at any time during the twenty years of its acquiescence in the exercise of the right claimed by plaintiff.

■ Defendant also contends that not all of the water flowing in his ditch comes from springs and swamps along its course; that part of its arises by means of percolation from the irrigation of lands lying on

the bench above the bluff. The burden was on defendant to show that the water he takes through his ditch was not tributary to Spring Creek. Jackson v. Cowan, 33 Idaho 525, 196 P. 216 (1921); De Haas v. Benesch, 116 Colo. 344, 181 P.2d 453, 456 (1947). Defendant did not sustain this burden. The flow in controversy in this case is the early spring water usually arising early in May, prior to the spring runoff from the mountains. During this period of about two weeks, the water in the creek is not as plentiful as it is during the rest of the irrigation season. The evidence in this case is to the effect that irrigation of land on the bench above the bluff does not occur until after that period and that percolation from that source would not reach defendant's ditch during the early spring shortage. Further, the right of the water users above the bluff is also junior to plaintiffs' right and for that reason also, water from that source would not be available to defendant against an assertion of plaintiffs' prior right.

█ Defendant also contends that an appropriator from Spring Creek (the Missouri Canal) has an earlier right than that of plaintiffs and its diversion being upstream from that of the plaintiffs, the filling of that right during the early spring shortage period would leave no water in the creek available to plaintiffs, because any water allowed to flow from defendant's ditch to Spring Creek would be diverted by the Missouri Canal. This contention begs the question. As the early spring shortage period draws to a close there would be days when the full right of the Missouri Canal would be satisfied and some excess would flow to plaintiffs' diversion in the absence of diversion by defendant above. Also, on occasions when the Missouri Canal was not diverting the full amount of its decreed water, it would be required to allow the excess to flow down to the plaintiffs, the next appropriator in priority.

"* * * says Mr. Chief Justice Lewis in Proctor v. Jennings, 6 Nev. 83, 3 Am. Rep. 240, '* * * The subsequent appropriator only acquires what has not been secured by those prior to him in time. But what he does thus secure is as absolute and perfect, and free from any right of others to interfere * * *, as the rights of those before him are secure from interference by him.' * * * The rights of the parties to this suit must be determined therefore, with reference to the priorities as between themselves, without regard to the rights of persons not parties to the suit, and who, of course, cannot be affected in any way by the decree." McCall v. Porter, 42 Or. 49, 70 P. 820, 823–824 (1902), reh. den. 42 Or. 49, 71 P. 976 (1903)

█ Under the facts involved in this case, the court's conclusion that the best use of the water was the use made of it by defendant, is immaterial and lends no support to the judgment. The policy of the law against the waste of irrigation water cannot be misconstrued or misapplied in such manner as to permit a junior appropriator to take away the water right of a prior appropriator. So long as the water from the springs and swamps, flowing in its natural channels, would reach Spring Creek in usable quantities, plaintiffs are entitled to enjoin defendant's interference therewith. The fact that some of the water would be lost by evaporation or percolation would not afford this defendant any right to divert it. Ward v. Kidd, 87 Idaho 216, 392 P.2d 183 (1964); State ex rel. Cary v. Cochran, 138 Neb. 163, 292 N.W. 239 (1940); Raymond v. Wimsette, 12 Mont. 551, 31 P. 537 (1892).

█ As between two appropriators, both using the water for irrigation, neither has a better use or preference over the other. Idaho Constitution, art. 15, § 3.

The judgment is reversed and the cause is remanded with directions to the trial court to enter judgment in favor of plaintiffs and against the defendant in harmony with this opinion. The place or places and the manner and means of releasing the water from defendant's ditch so that it can flow to Spring Creek during times when

plaintiffs' right is not fully satisfied, is left to the agreement of the parties and in the absence of such agreement shall be determined and adjudged by the trial court.

Costs to appellants.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.