Justice EISMANN,
concurring in the result with respect to Part B.
I concur in the majority opinion, but concur in the result with respect to Part B.
The majority states, “The Director then concluded that a trim line was justified in this case on two bases: (1) to ensure maximum and beneficial use of the State’s water resources and (2) to account for uncertainty in ESPAM 2.1.” The majority then states, “We find that -the Director had discretion to implement the trim line based on the policy of beneficial use. Therefore, we need not address whether the trim line was also justified to account for model uncertainty....” Thus, the majority holds that the distribution of water when there is a shortage can be based entirely upon the Director’s discretion “to ensure maximum and beneficial use of the State’s water resources.”
I do not read the Director’s order as being based upon alternative grounds. Rather, it is clear that the director based his decision upon the inaccuracy of ESPAM 2.1 combined with the large number of acres that would be dried up if the software’s prediction was incorrect. Before addressing why I concur in the result, I will address why I do not concur in Part B.
A. The majority abandons the constitutional requirement of prior appropriation.
The majority opinion in Part B abandons the constitutional requirement of first in time, first in right and states that the Director can apportion water in a manner “to ensure maximum and beneficial use of the State’s water resources.” “Under the provisions of section 3, art. 15, of the Constitution of this state, priority of appropriation gives the better right as between those using water.” Brose v. Bd. of Dirs. of Nampa & Meridian Irr. Dist., 20 Idaho 281, 285, 118 P. 504, 505 (1911). “This provision of the Constitution has been strictly adhered to in the many decisions this court has rendered construing the same, and this court has universally recognized the rule thus announced, that first in time of appropriation gives the first right to the use of water” Id.
The relevant part of Article XV, section 3, states: “The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be de *138 nied, except that the state may regulate and limit the use thereof for power purposes. Priority of appropriation shall give the better right as between those using the water....” As we stated in In re Distribution of Water to Various Water Rights Held By or For Benefit of A & B Irrigation District, 156 Idaho 640, 315 P.3d 828 (2013), we stated, “The prior appropriation doctrine is comprised of two bedrock principles—that the first appropriator in time is the first in right and that water must be placed to a beneficial use.” Id, at 650, 315 P.3d at 838.
The water rights of Rangen, Inc. (“Ran-gen”), at issue are surface water rights, which “shall never be denied” under the Constitution. “However, the Constitution makes no mention of ground water rights.” Clear Springs Foods, Inc. v. Spackman, 150 Idaho 790, 801, 252 P.3d 71, 82 (2011). Thus, it is Rangeris water rights that are protected by the Constitution, not the competing water rights of ground water appropriators. There is no contention that Rangen is not applying the water it diverts to a beneficial use.
We have held that a water user can be required to change the water user’s manner of diversion if it is unreasonable, Van Camp v. Emery, 13 Idaho 202, 89 P. 752 (1907), as did the Supreme Court in Schodde v. Twin Falls Land & Water Co., 224 U.S. 107, 32 S.Ct. 470, 56 L.Ed. 686 (1912). There is no contention that Rangen’s manner of diversion is unreasonable.
The majority stretches these two cases to hold that the Director has authority to distribute water not based upon priority, but based solely upon the Director’s understanding of “the maximum and beneficial use of the State’s water resources.” The Director does not have the discretion to ignore the Constitution, nor does the majority. Under the majority opinion, water need no longer be distributed according to priority, which means that no one’s water rights are secure. “Priority in time is an essential part of western water law and to diminish one’s priority works an undeniable injury to that water right holder.” Jenkins v. State, Dep’t of Water Res., 103 Idaho 384, 388, 647 P.2d 1256, 1260 (1982).
B. The majority changes the meaning of the words “beneficial use.”
In order to eliminate the doctrine of prior appropriation, the majority changes the meaning of the words “beneficial use” so that it becomes a discretionary determination by the Director comparing the relative financial benefits of the senior appropriator using his decreed water versus the loss sustained by the junior appropriators. That is not the meaning of “beneficial use” as that term is used with respect to water rights.
We have previously explained that “beneficial use” does not mean the equitable distribution of water. As we stated in Drake v. Earhart, 2 Idaho 750, 23 P. 541 (1890):
[“] distinction is made in those states and territories, by the custom of miners or settlers or by the courts, in the rights of the first appropriator from the use made of the water, if the use be a beneficial one.” In this case it is said: “The right of the first appropriator, exercised within reasonable limits, is respected;” that it “is not unrestricted. It must be exercised with reference to the general condition of the country, and the necessities of the people.” This language has been seized upon as justifying the equitable, if not equal, division of the water among all desiring or needing it, regardless of the claim of the prior appropriator. Such a construction is not justified, and would make the decision inconsistent with itself, as well as with the other decisions of the same court.
Id. at 756, 23 P. at 543 (emphasis added).
It is clear that “beneficial use” refers to how the appropriator uses the water, not whether other uses would be more beneficial. When the water is diverted from a watercourse, beneficial use means how the appropriator uses it after diverting the water. Article XV, section 3, begins, “The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied—” The diversion came first and then the application of the water to a beneficial use. As we explained in United States v. Pioneer Irrigation District, 144 Idaho 106, 110, 157 P.3d 600, 604 (2007):
*139 In Idaho it is “a well-settled rule of public policy that the right to the use of the public water of the state can only be claimed where it is applied to a beneficial use in the manner required by law.” Under the constitutional method of appropriation, appropriation is completed upon application of the water to the beneficial use for which the water is appropriated. When following the constitutional method, one “must depend upon actual appropriation, that is to say, actual diversion and application to beneficial vise.” Under the statutory method of appropriation, the appropriation is not complete and a license will not issue until there is proof of application to beneficial use for the purpose for which it was ■ originally intended. I.C. §§ 42-217, 42-219. Under either the constitutional or statutory method of appropriation, the appropriator must apply the water to a beneficial use in order to have a valid water right in Idaho.
144 Idaho at 110, 157 P.3d at 604 (emphases added). To reiterate, “Under either the constitutional or statutory method of appropriation, the appropriator must apply the water to a beneficial use in order to have a valid water right in Idaho,” Id. (Emphasis added).
We discussed what constituted “beneficial use” in Clear Springs Foods:
The right to appropriate water is for “beneficial uses;” not merely for profitable businesses. Beneficial use is not defined in the Constitution, nor has it been comprehensively defined by statute or by this Court. However, a beneficial use is not limited to a use that generates a profit, or even income. For example, the Constitution lists using water for “domestic purposes” as a beneficial use. We have held that “firefighting” is a beneficial use of water. Likewise, the legislature has declared as beneficial uses “drinking water,” “the watering of domestic livestock,” using low temperature geothermal resources “primarily for heat value,” using instream water “for the protection of fish and wildlife habitat, aquatic life, recreation, aesthetic beauty, transportation and navigation values, and water quality,” and using water in lakes and water discharging from springs for “scenic beauty.”
Clear Springs Foods, 150 Idaho at 811, 252 P.3d at 92 (citations omitted). All of these beneficial uses were the manner in which the appropriator used the water appropriated. It was not comparing the benefit to the senior appropriator and the harm to the junior appropriator from applying the constitutional provision of priority of appropriation.
■ The framers of our Constitution understood that the most beneficial use of water required distributing water in accordance with the priority of water rights—first in time, first in right. As this Court stated in Hard v. Boise City Irrigation & Land Co., 9 Idaho 589, 76 P. 331 (1904):
It is certainly unnecessary for us to suggest that it was the evident intent of the framers of the Constitution to' so husband the water of the state as to secure the most beneficial use thereof, that is, that it should always be so used as to benefit the greatest number of inhabitants of the state. They were careful to provide who should be entitled to the preference right to the use of the waters flowing in our natural streams.
Nearly every session of our Legislature has attempted to improve upon its predecessor by so legislating as to improve the former use of water, and an inspection of the various acts plainly shows that the guiding star has always been to so legislate as to protect all users of water in the most useful, beneficial way—keeping in view the rule existing all over the arid region: “First in time first in right.”
Id. at 594, 76 P. at 332 (emphases added). The maximum beneficial use of water requires certainty as to water rights, not, as the majority holds, the right of the Director to distribute water according to his discretion. Indeed, the majority does not even give any guidelines as to how the discretion it grants to the Director is to be exercised,
There is no contention that Rangen is not applying the water it diverts to a beneficial use and cannot apply water to the extent of its water right to a beneficial use. Thus, the doctrine of beneficial use cannot be used to determine the amount of water it is entitled *140 to receive. Whether a particular appropriator is applying water to a beneficial use is based entirely upon what the appropriator is doing with the water. What others may do with it has no bearing.
Rangen’s right to obtain the amount of water that has been decreed cannot be based upon comparing the harm to junior appropriators and the benefit to Rangen. As we held in Clear Springs Foods, “A delivery call cannot be denied on the ground that curtailment of junior appropriators would result in substantial economic harm.” 150 Idaho at 803, 252 P.3d at 84.
Such a comparison in this case would stack the deck against Rangen. There is no evidence that the water the junior appropriators would be unable to divert would be wasted. If we were to institute the balancing test advocated by the majority, we must compare the juniors against all of those holding senior water rights who are not obtaining all the water to which they are entitled based upon the juniors’ diversions. Rangen sought to introduce that evidence in the administrative proceeding, but the Director held it as irrelevant. If the Court is going to engage in that balancing test under the rubric of “beneficial use,” then the balancing should include all of the seniors who are not receiving their appropriated water.
C. The conjunctive management rules cannot alter the Constitution.
The majority relies upon conjunctive management rules to support its abandonment of the prior appropriation doctrine. Administrative rules cannot modify the Constitution. The majority relies upon Conjunctive Management Rule 20.03, which states, “An appropriator is not entitled to command the entirety of large volumes of water in a surface or ground water source to support his appropriation contrary to the public policy of reasonable use of water....” That rule must be construed in a manner that upholds its constitutionality. American Falls Reservoir Dist. No. 2 v. Idaho Dep’t of Water Res., 143 Idaho 862, 869, 154 P.3d 433, 440 (2007). As we stated in Clear Springs, that can only apply to the means of diversion.
Conjunctive Management Rule 20.03 states, “An appropriator is not entitled to command the entirety of large volumes of water in a surface or ground water source to support his appropriation contrary to the public policy of reasonable use of water, ...” That is consistent with our holding in Van Camp. The senior appropriator in Van Camp was entitled to his water right; he simply had to change his unreasonable means of diversion. As we stated, “Whatever amount of water defendant shows himself entitled to for the irrigation of his meadows or other lands as a prior right over the plaintiff, the judgment should so decree, but beyond that he cannot go under any other pretext or claims for the natural condition of the stream.” Id.
Clear Springs Foods, 150 Idaho at 809, 252 P.3d at 90.
As we also stated in Clear Springs Foods:
A delivery call cannot be denied on the ground that curtailment of junior appropriators would result in substantial economic harm. Such a holding would be contrary to the provision in Idaho Code § 42-233a (emphases added), stating:The director, upon determination that the ground water supply is insufficient to meet the demands of water rights within all or portions of a critical ground water area, shall order those water right holders on a time priority basis, within the area determined by the director, to cease or reduce withdrawal of water until such time as the director determines there is sufficient ground water.
In this ease, it would also be contrary to Article XV, § 3, of the Idaho Constitution, which states, “Priority of appropriation shall give the better right as between those using the water....”
Id. at 803, 252 P.3d at 84.
D. Following the Constitution is not wasting water.
“We have long recognized that an appropriator may not waste water, but must permit others to use the water when the appropriator is not applying it to a beneficial use.” *141 Joyce Livestock Co. v. United States, 144 Idaho 1, 15, 156 P.3d 502, 516 (2007). However, the policy against waste does not permit a junior appropriator to take water before it would reach the senior appropriator.
In Martiny v. Wells, 91 Idaho 215, 419 P.2d 470 (1966), we addressed the issue of whether an upstream junior appropriator could deprive a senior appropriator of irrigation water due to significant conveyance losses in spring water reaching the creek from which the senior diverted water. The creek flowed through a swampy area that was fed by springs on both sides, and the junior appropriator constructed a ditch between the creek and the springs on one side of the creek to catch the water. Id. at 216, 419 P.2d at 471. The ditch was the junior’s only diversion. Id. There was a dispute as to how much water from the springs would actually reach the creek, and the district court found that “only a portion of the flow of the springs reaches Spring Creek,” although it did not quantify what that portion was. Id at 216-17, 419 P.2d at 471-72. However, the court did find that the “best use of the water flowing from the springs and the swampy area around the [junior’s] ditch is the collection of said water in the [junior’s] ditch for irrigation of the property served by said ditch.” Id. at 217, 419 P.2d at 472. We reversed the district court, stating:
Under the facts involved in this case, the court’s conclusion that, the best use of the water was the use made of it by defendant, is immaterial and lends no support to the judgment. The policy of the law against the waste of irrigation water cannot be misconstrued or misapplied in such manner as to permit a junior appropriator to take away the water right of a prior appropriator. So long as the water from the springs and swamps, flowing in its natural channels, would reach Spring Creek in usable quantities, plaintiffs are entitled to enjoin defendant’s interference therewith. The fact that some of the tuater would be lost by evaporation or percolation would not afford this defendant any right to divert it.
Id. at 219, 419 P.2d at 474 (emphasis added). As we stated in Martiny, the junior appropriator cannot take the water as long as the water would reach the senior appropriator “in usable quanties.” Id.
We reiterated that holding in Gilbert v. Smith, 97 Idaho 735, 552 P.2d 1220 (1976), wherein we stated:
As a rule, the law of water rights in this state embodies a policy against the waste of irrigation water. Such policy is not to be construed, however, so as to permit an upstream junior appropriator to interfere with the water right of a downstream senior appropriator so long as the water flowing in its natural channels would reach the point of downstream diversion.
Id. at 739, 552 P.2d at 1224 (emphasis added). We added that a junior appropriator could take the water only if “due to seepage, evaporation, channel absorption or other conditions beyond the control of the appropriators the water in the stream will not reach the point of the prior appropriator in sufficient quantity for him to apply it to beneficial use.” Id.
There is no contention that Rangen is wasting the water it is diverting. The only issue is whether water being taken by junior appropriators would reach Rangen’s point of diversion in sufficient quantity for him to apply it to beneficial use.
E. I concur in the result with respect to Part B of the majority opinion.
As I stated above, it is clear that the Director based his decision upon the inaccuracy of ESPAM 2.1 combined with the large number of acres that would be dried up if the software’s prediction was incorrect.
The Director found that ESPAM 2.1 is “an imperfect approximation of a complex physical system,” but it was the best scientific tool currently available for predicting the effects of groundwater pumping on the discharge at the Rangen model cell. That cell is not simply the Curren Tunnel from which Ran-gen obtains water, but the Director found that 63% of the curtailment benefits accruing to the model cell would accrue to the tunnel. In reaching his decision, the Director took into consideration the inaccuracy of ESPAM 2.1 in predicting the water that would flow to *142 the Curren Tunnel if pumping east of the Great Rift were curtailed. The Director stated:
There is generally higher predictive uncertainty on the eastern side of the Great Rift, however impacts from several pumping locations evaluated on the eastern side of the Great Rift had negligible impacts on the spring cell evaluated in the Department’s predictive uncertainty analysis. Uncertainty in the model justifies use of a trim line.
We held in Clear Springs Foods that the Director has the discretion to establish a trim line based upon uncertainty in the computer model. We stated:
The Director concluded that there was up to a 10% margin of error in the groundwater model due to the margin of error in the stream gauges, and he decided not to curtail appropriators who were within that margin of error when deciding whether they were causing material injury to the Spring Users’ water rights. The Director perceived the issue as discretionary, he acted within the outer limits of his discretion and consistently with the legal standards applicable to the available choices, and he reached his decision through an exercise of reason. The district court did not err in upholding the Director’s decision in this regard.
150 Idaho at 817, 252 P.3d at 98.
In this case, the Director set the trim line at the Great Rift. Model uncertainty is the only constitutional basis for doing so.
Justice HORTON concurs.